■ THOMAS F. GUIDA, Respondent, v. 154 WEST 14TH STREET CO., INC., et al., Appellants.— In a negligence action to recover damages for personal injuries, defendants appeal from a judgment of the Supreme Court, Queens County, entered June 29, 1960, against them, after a nonjury trial, upon a decision awarding $12,000 to plaintiff. Judgment reversed on the law and the facts, with costs, and complaint dismissed. Findings of fact inconsistent herewith are reversed and new findings are made as indicated herein. At the time of the accident, on March 13, 1956, plaintiff was a student in the school conducted by defendant RCA Institutes, Inc. He attended a class which, together with certain other classes, was held on the eleventh floor of the commercial building that was owned and operated by defendant 154 West 14th Street Co., Inc. The building is located at the southeasterly corner of 14th Street and Seventh Avenue, in New York City. RCA Institutes, Inc., was the lessee of the entire floor. On each day the prescribed termination time for these classes was 6:15 P.M. On the day in question, at about 6:00 P.M., about 200 students (including plaintiff) of these classes emerged from their classrooms and converged to the sole passenger elevator which was in operation. There were four

elevators in the building, two for passengers and two for freight. There were two stairways, one ending in the lobby of the building, and the other ending at the freight platform. In the management of the building, it was the custom for the freight elevators to cease operating at 4:30 P.M., and for only one passenger elevator to operate after 6:00 P.M. Plaintiff and another student, after waiting about 10 minutes for an opportunity to be taken down in the elevator, walked down the stairway which led to the freight platform and left the building through the door at the foot of this stairway which led into an alley between the southerly side of the building and another building on Seventh Avenue. They found that a seven-foot high metal gate, running from building to building across the width of the alley, near the sidewalk, was locked, and that it barred their only means of egress from the alley to the street, Seventh Avenue. The only other means of egress from the alley was back into the building through the same freight door or two other nearby doors, but that was also unavailable because all these doors were locked. The door through which these young men had come into the alley was customarily adjusted at 6:00 P.M. so that it could not be opened from the outside. Plaintiff and his companion remained confined in the alley about 10 or 15 minutes. During that time they made two separate efforts to attract attention by ringing the freight elevator bells, by banging on the door and by shouting near the freight elevators, but without success. However, the evidence clearly established that the hour in question was the "rush hour," when people walking on Seventh Avenue, incident to their use of the subway entrance near the northerly side of this very building, passed in front of this alley; and there was no satisfactory evidence that plaintiff or his companion made any attempt or any reasonable attempt to attract a pedestrian to come to their aid, viz., by entering the building and opening the freight door from the inside, or by having an employee of the building do that or unlock the gate. Instead, plaintiff climbed over the gate. In the process of letting himself down on the street side, a ring on one of his fingers caught in a picket on the top of the gate, with resultant severe injury to the finger. In our opinion, there was no causal relationship between any duty on the part of defendants with respect to providing adequate and safe means of exit and the injuries sustained by plaintiff. Defendants could not reasonably have foreseen that a person in the circumstances in which plaintiff found himself would attempt to climb the fence. Plaintiff was not in an emergent situation. He was in a position of absolute safety, although subjected to inconvenience. There is no reason to believe that passers-by would not have assisted him. Had he called for such aid, he would not have been injured (see *O'Connor* v. *1751 Broadway*, 1 A D 2d 836, affd. 2 N Y 2d 769). Ughetta, Acting P. J., Kleinfeld, Christ, Pette and Brennan, JJ., concur.