OPINION OF THE COURT
Simons, J.
Plaintiff, Teresa Mas, was injured when attempting to es *684 cape from an elevator stuck between floors in her apartment building. She and her husband instituted this action against defendant Two Bridges Associates, the owner of the building, defendant Grenadier Realty Corporation, the managing agent and defendant Otis Elevator Company, which had contracted to maintain the elevator, seeking damages for Ms. Mas’ personal injuries and her husband’s derivative claim.* Plaintiffs asserted that defendants negligently permitted the elevator to remain in a dangerous and defective condition and that the Owner negligently failed to provide assistance to Ms. Mas or notify Otis or the other rescue personnel following its malfunction. Defendants interposed cross claims for indemnification and contribution against each other.
After trial the jury returned a verdict of $400,000 in plaintiff’s favor, apportioning fault 5% against plaintiff for her comparative negligence, 10% against defendant Owner for failure to provide assistance, and 85% against the Owner and Otis for failure to maintain and repair. The trial court subsequently granted defendant Owner judgment on its cross claim against Otis for indemnification of the 85% portion of the verdict attributable to negligent maintenance and repair of the elevator. The Appellate Division affirmed, without opinion, and we granted defendant Otis Elevator Company leave to appeal.
Otis contends that the court improperly instructed the jury on the emergency doctrine and therefore seeks a new trial on liability and damages or, failing that, a reversal of the Owner’s indemnity judgment and a new trial to reapportion the damages between the defendants. It contends that indemnity may not be awarded because a properly charged jury would have found the Owner actually at fault for failing to maintain the elevator but that even if the Owner was only vicariously liable for Otis’ failure to maintain the elevator, the Owner cannot have common-law indemnity when it was at fault, as the jury found, for failing to provide emergency assistance. For the reasons which follow, we reject Otis’ contentions and affirm the order of the Appellate Division.
The action arises from the following facts.
On the afternoon of September 15, 1984 at approximately 4:00 p.m., plaintiff and Reuben Requena, a young man un *685 known to her, entered an elevator on the ground floor of the premises of 275 Cherry Street in downtown Manhattan. Plaintiff pressed the button for the 4th floor, intending to return to her apartment, and Requena pressed the button for the 26th floor, intending to visit his sister who lived there. The elevator passed the 4th floor without stopping and proceeded to the top of the building, shaking violently from side to side and making loud banging noises as it rose. Upon reaching the 26th floor the elevator stopped momentarily, the doors opened and closed quickly, and then the elevator made a booming sound and suddenly began sliding down in an uneven manner, eventually coming to rest between the 25th and 26th floors. The light went out when the elevator stopped. The passengers sounded the alarm bell for approximately 20 minutes without response. They also pressed various other buttons but the elevator failed to move. Plaintiff testified that while confined she was terrified that "the elevator was going to fall and that [she] would be killed.” According to Requena, plaintiff was very nervous; she paced the elevator, perspiring, crying, shaking, screaming for help and praying. He testified that it was becoming very hot and that he thought plaintiff was going to have a heart attack or collapse.
Requena was in some distress himself. He is asthmatic and was having trouble breathing in the confinement of the elevator. Accordingly, after about 20 minutes, he pried open the elevator doors and the two passengers observed the 25th floor landing about 4 feet below them. After waiting an additional 10 or 15 minutes with the doors open, Requena stated he was going to leave the elevator to seek assistance. Plaintiff pleaded with him not to leave her there alone, explaining that she was afraid she would die. They agreed that she would exit while he held the doors open and then he would follow. When plaintiff jumped to the 25th floor she landed on her right foot, injured it, and fell to the floor. Requena followed her. Two building security guards soon arrived and plaintiff was transported to the hospital for treatment of her foot.
At the conclusion of the trial the court instructed the jury that the Owner and Otis were responsible for maintaining the elevator, the Owner because it had a nondelegable duty imposed by section 78 of the Multiple Dwelling Law and Otis because of its contract with the Owner assuming that responsibility. The court also instructed the jury that the Owner had a duty to use reasonable care to respond to the elevator emergency alarm. The court denied Otis’ request to charge *686 that the Owner could be liable "irrespective of Otis’ failure” to maintain the elevator, if "the jury were to find that the building owner had actual notice of a recurring problem and should have done something” about it. Interrogatories were submitted to the jury embracing the two accepted theories of liability and it was instructed to find the percentage of negligence, if any, attributable to each party.
The jury returned a verdict in plaintiffs favor and apportioned fault between the parties. The trial court subsequently granted the Owner indemnity from Otis on the cause of action seeking damages for negligent inspection and maintenance of the elevator.
Otis’ claim that it was error to charge the emergency rule does not require extended discussion.
The trial court instructed the jury that "a person faced with an emergency who acts without opportunity for deliberation * * * may not be charged with contributory negligence, if she acts as a reasonably prudent person would act under the same emergency circumstances” that an emergency is "a sudden and unforeseen condition not brought about or contributed to by [the plaintiffs] own negligence.” As the words make clear, the court stated an objective standard of care not, as Otis contends, a subjective standard.
Otis contends further, however, that the court should not have delivered the charge because the event was not sudden and unforeseeable and did not require immediate action by plaintiff leaving her little time for reflection or deliberate judgment. Plaintiff counters that there was no error but if there was, the error was harmless because the jury found her 5% responsible for her injuries.
We think that on the evidence in this case the emergency was not dissipated by a lapse of time, as a matter of law, and that the question was properly submitted to the jury. After a violent and noisy ride 22 stories past the floor plaintiff had designated, the elevator in which she was riding stopped suddenly and then dropped several feet. She remained confined in the dark for over 20 minutes, without assistance and without assurance that the elevator would not fall further at any minute. The elevator had failed to respond to the controls and it continued to do so as she and Requena pressed buttons and tried to move to a floor where they could exit safely. The circumstances were obviously perilous and the lapse of time did not necessarily permit plaintiff the opportunity for cau *687 tious deliberation because the precariousness of her situation continued unabated (cf., Wagner v International Ry. Co., 232 NY 176). Thus, unlike cases relied upon by Otis in which the emergency had ended leaving plaintiff in a position of safety (see, Mack v Altmans Stage Light. Co., 98 AD2d 468; Guida v 154 W. 14th St. Co., 13 AD2d 695, affd 11 NY2d 731), the jury in this case could find that the emergency continued throughout the period of confinement and that when plaintiff jumped she acted without an opportunity for reflection or deliberation. Accordingly, we find no error in the court permitting the jury to do so.
Alternatively, Otis contends that the Owner was not entitled to indemnity on the portion of the verdict attributable to negligent inspection and repairs. It attacks the judgment on two grounds. First, it urges that notwithstanding its maintenance contract, the Owner had a duty to shut down the elevator because it had notice of its dangerous condition. Thus, it contends that the Owner’s liability for maintenance of the elevator was not solely vicarious, arising from Otis’ culpable conduct, and it cannot recover in common-law indemnity.
Second, Otis maintains that there may be no indemnity because, as the jury found, the Owner was also at fault for failing to respond to the alarm and, inasmuch as the parties are in pari delicto, all damages must be apportioned.
The first issue involves an interpretation of the contract to determine the scope of Otis’ duty to maintain and repair the elevator. The second presents a novel question of the application of the legal principles applying to indemnity and contribution in a situation in which the Owner’s liability is based on two theories: failure to respond, which involves primary negligence and for which there may be contribution in an appropriate case but not indemnity, and failure to maintain, which involves vicarious liability because of the contract with Otis, and could, standing alone, warrant a recovery in indemnity.
The owner of a multiple dwelling owes a duty to persons on its premises to maintain them in a reasonably safe condition (Multiple Dwelling Law § 78). This duty is nondelegable and a party injured by the owner’s failure to fulfill it may recover from the owner even though the responsibility for maintenance has been transferred to another. As between the owner and one voluntarily undertaking responsibility for maintenance, however, the party assuming the contractual duty is *688 liable to the owner for the damages the owner must pay. We explained these principles in Rogers v Dorchester Assocs. (32 NY2d 553), a case in which the property owner had entered into an exclusive maintenance agreement with Otis Elevator Company much like the one presently before us. We held there that the owner was liable to the injured party because of the statutory provision but that indemnification was not barred because of the owner’s nondelegable duty; as between the owner and Otis the former "had the right, under the maintenance contract, to look to Otis to perform [the owner’s] entire duty to plaintiff.” (Id.., at 563.) Notwithstanding this general rule, Otis maintains that the Owner may not obtain indemnity here because it also had notice of the unsafe condition before the accident and thus, it had a duty to shut down the elevator or take other appropriate safety precautions.
Defendant Otis had executed an agreement with the managing agent, acting on behalf of the Owner, in which it assumed full responsibility for (1) keeping the equipment properly adjusted, (2) using all reasonable care to maintain the elevator equipment in proper and safe operating condition, (3) regularly and systematically examining, adjusting and, if necessary, repairing elevator parts, (4) examining periodically all safety devices and governors, (5) providing emergency minor adjustments, and (6) maintaining parts on the premises for routine maintenance. For this purpose, Otis maintained a storeroom on the premises and agreed to have someone available 24 hours a day 7 days a week. It had access to enter the building at will to service the elevators and its serviceman testified that he inspected the elevators every day and spent an average 4-6 hours per vyeek repairing and maintaining them.
In view of this broad assumption of responsibility, the trial court correctly ruled that Otis had undertaken the duty to remove the elevator from service if it had notice of the problem. Thus it was irrelevant, for purposes of cross-over liability, that the Owner also knew of the problem and could have shut down the elevator before the accident (see, Rogers v Dorchester Assocs., supra, at 562).
Finally, Otis asserts that common-law indemnity is not available to the Owner because the jury found it guilty of primary negligence contributing to plaintiff’s injuries in failing to respond to the elevator alarm. That being so, Otis *689 maintains the third-party claim, if the Owner has one, must be for contribution, not indemnity, and there must be a new trial to apportion the damages between the defendants.
The short answer is that the jury has already apportioned the primary negligence of the defendants: 10% to the Owner for failure to respond and 85% to Otis for failure to maintain the elevator. The Owner is liable for failure to maintain also, but not because it has been negligent, only by imputation of law. For policy reasons both are answerable to plaintiff, but their "wrong” is the same and thus there is no rational way to apportion the damages between them on the theory of negligent maintenance; any apportionment would necessarily result in 100% liability against Otis in favor of the Owner because Otis had the "entire duty to plaintiff” under the contract (see, Rogers v Dorchester Assocs., supra, at 563; Prosser and Keeton, Torts § 52, at 346 [5th ed]; see also, CPLR 1401, 1404 [b]). That being so, the question presented is whether indemnity is foreclosed by the finding that the Owner was also guilty of primary negligence on a separate theory of liability.
Our prior cases have not addressed the issue. Generally, they have considered either indemnity in favor of a tort-feasor who is vicariously liable for another’s negligence without having breached any duty owed to the injured plaintiff (see, Kelly v Diesel Constr., 35 NY2d 1; Rogers v Dorchester Assocs., supra), or in favor of a tort-feasor liable for damages arising for breach of a particular duty owed to the injured plaintiff and seeking indemnity over from another who has breached a related duty owed to the injured plaintiff (see, Guzman v Haven Plaza Hous. Dev. Fund Co., 69 NY2d 559; D’Ambrosio v City of New York, 55 NY2d 454). Otis maintains that contribution and indemnity are mutually exclusive and since the jury’s verdict calls for contribution between the defendants, the entire verdict must be apportioned; contribution and indemnity cannot both be at work between the same parties in one verdict.
The conceptual basis of contribution and indemnity have been traced many times before (see, e.g., Glaser v Fortunoff of Westbury Corp., 71 NY2d 643, 646; Guzman v Haven Plaza Hous. Dev. Fund Co., supra, at 567-568; D’Ambrosio v City of New York, supra; McDermott v City of New York, 50 NY2d 211, 216-217). Briefly, in contribution, the tort-feasors responsible for plaintiff’s loss share liability for it. Since they are in *690 pari delicto, their common liability to plaintiff is apportioned and each tort-feasor pays his ratable part of the loss. In indemnity which arises commonly in cases involving vicarious liability (see, e.g., Rogers v Dorchester Assocs., 32 NY2d 553, supra [duty to maintain premises]; Logan v Esterly, 34 NY2d 648 [public highway construction]; Traub v Dinzler, 309 NY 395 [automobile owner and driver]; see generally, Restatement [Second] of Torts § 886B [2]) a party held legally liable to plaintiff shifts the entire loss to another. The right to do so may be based upon an express contract, but more commonly the indemnity obligation is implied, as it is here, based upon the law’s notion of what is fair and proper as between the parties.
Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other (McDermott v City of New York, supra, at 216-217; see also, Guzman v Haven Hous. Dev. Fund Co., supra, at 568; Dole v Dow Chem. Co., 30 NY2d 143, 152). Generally, it is available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer, but authorities have noted that “the principle is not * * * limited to those who are personally free from fault” (Prosser and Keeton, Torts § 51, at 342 [5th ed]; see also, Restatement [Second] of Torts § 886B [2], comment k). The jury having found separate grounds of liability in this case and apportioned the damages attributable to each theory, we see no reason why equitable principles should prevent a defendant from recovering a loss occasioned by imputation of law, notwithstanding its sole liability for another part of the damages based upon an act of primary negligence.
The purpose of all contribution and indemnity rules is the equitable distribution of the loss occasioned by multiple defendants. In furtherance of that purpose the courts have granted relief in a variety of cases in favor of the party who, in fairness, ought not bear the loss, allowing it to recover from the party actually at fault. They have found indemnity appropriate because of a separate duty owed the indemnitee by the indemnitor (thus the indemnitee may recover for the wrong to it), because there is "a great difference” in the gravity of the fault of the two tort-feasors, or because the duties owed to the injured plaintiffs and causing injury are disproportionate (see, Prosser and Keeton, op. cit., at 344; see also, Davis, Indemnity *691 Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L Rev 517, 544-553).
These considerations are hardly precise, nor do they supplant our well-settled rules on the subject, but they illustrate that indemnification of this Owner’s claim for its loss on the negligent maintenance theory is appropriate. Had plaintiff’s verdict rested solely on the failure to maintain the elevator, the Owner’s right to indemnification would be cleár. Otis had voluntarily promised that it would inspect, repair and maintain the elevator and the Owner was entitled to rely on that promise and recover under settled rules of indemnity. Moreover, failure to provide the Owner with relief here will result in it being responsible for a disproportionate share of the entire verdict, far exceeding the measure of its actual wrongdoing. The damages to plaintiff arise principally from Otis’ primary negligence. The Owner breached a separate and discrete duty to provide assistance after the plaintiff was trapped between floors, and for that it alone has been held in damages. But that does not diminish Otis’ negligence in subjecting the passenger in the elevator to risk. If each party is to be accountable for its fault, then Otis should answer to the Owner for its negligence in maintaining the elevator.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone and Hancock, Jr., concur; Judge Bellacosa taking no part.
Order affirmed, with costs.

 The owner and managing agent appeared jointly and, for convenience, will be referred to as the Owner.
The derivative action of plaintiff’s husband is not before us on appeal.