**AXEL JOHNSON, INC., Plaintiff,**

v.

**ARTHUR ANDERSEN & CO., Defendant and Third–Party Plaintiff,**

v.

**INDUSTRIAL TECTONICS, INC., ITI Holding Corporation, Helmut F. Stern, Robert A. Gockel, Frederick J. Malecki and Jim Babcock, Third–Party Defendants.**

**No. 89 Civ. 6490 (MEL).**

United States District Court, S.D. New York.

Aug. 19, 1993.

Milberg Weiss Bershad Specthrie & Lerach, New York City, for plaintiff and third party defendant Industrial Tectonics, Inc.; Jared Specthrie, Michael C. Spencer, Sanford P. Dumain, Deborah Clark–Weintraub, of counsel.

Curtis, Mallet–Prevost, Colt & Mosle, New York City, for defendant and third-party plaintiff; Benard V. Preziosi, Jr., Eliot Lauer, Peter Sullivan, of counsel.

Willkie Farr & Gallagher, New York City, for third-party defendants Helmut F. Stern and ITI Holding Corp.; Brian E. O'Connor, Joanne M. Chormanski, of counsel.

Pinto, Rodgers & Kopf, Morristown, NJ, for third-party defendant Robert A. Gockel.

Frederick J. Malecki, pro se.

James F. Babcock, pro se.

LASKER, District Judge.

Third party defendants Industrial Tectonics, Inc. ("ITI"), ITI Holding Corporation, Helmut Stern, Robert A. Gockel, Frederick J. Malecki, and Jim Babcock, move to dismiss the third party complaint of defendant Arthur Andersen pursuant to Rule 9 and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.

ITI manufactures precision ball products and high performance bearings, particularly for defense, aerospace, and advanced commercial application. In December 1982, plaintiff Axel Johnson, Inc. bought all of ITI's outstanding shares. In this action, Johnson asserts that two key facts were materially misrepresented to it upon which it relied in making its purchase: (a) ITI's net income and net sales figures, which Johnson claims were overstated by several million dollars, and (b) ITI's report of potential lia-

bilities, which Johnson claims failed to disclose its potential liability for defectively priced contracts.

On December 18, 1985, a former employee of ITI filed a *qui tam* action on behalf of the United States against ITI and Johnson under the False Claims Act alleging that ITI had submitted inaccurate cost or pricing data in connection with a number of government military contracts entered into between 1980 and 1984. ITI and Johnson settled the action for $14,279,524.00.[1]

On September 28, 1989, Johnson brought an action against Arthur Andersen asserting that it had "relied on audit and other reports and representations made by [Arthur Andersen] in connection with Johnson's purchase of ITI and its conduct of ITI's business." Johnson's claims were brought under § 10(b) and Rule 10b–5 of the Securities and Exchange Act of 1934, and under state law principles of negligence, breach of contract and professional malpractice. Arthur Andersen had served as ITI's outside auditor since 1974.

By its third party complaint, filed May 22, 1991, Andersen seeks to make ITI and ITI's management bear their "fair" share of the damages. The third party defendants are ITI, ITI Holding, which sold 362,000 of the 368,000 shares of ITI stock to Johnson in December 1982, and ITI's senior financial management:

> Helmut Stern, President of ITI, and also the President and 85% owner of third-party defendant ITI Holding Corporation ("ITI Holding"), which owned 362,000 of the 368,000 shares of ITI that were sold to Johnson.
>
> Robert Gockel, Vice–President, Secretary and Treasurer of both ITI and ITI Holding, and the owner of the remaining 6000 shares of ITI that were sold to Johnson.
>
> Frederick Malecki, Controller of both ITI and ITI Holding, and
>
> Jim Babcock, ITI's Chief Accountant.

Andersen's third party complaint alleges three causes of action:

The first claims that "if Andersen is adjudged liable to plaintiff Johnson on the First Claim of the Complaint [*i.e.*, the 10b–5 claim], the third-party defendants ITI, ITI Holding, Stern, Malecki, and Babcock are, along with Andersen, joint tortfeasors and must contribute towards payment of the judgment." This claim for contribution is made solely with respect to the federal 10b–5 claim asserted by Johnson against Andersen.

The second seeks indemnification from those entities—ITI Holding, Gockel and Stern—who formerly owned and controlled ITI and sold their ITI shares to Johnson. According to Andersen's Memorandum in Opposition to the Motion, this claim relates solely to Andersen's potential liability under the state law claims asserted by Johnson.

The third seeks a recovery in unjust enrichment against ITI Holding, Gockel and Stern in the event Andersen is found liable to Johnson. The unjust enrichment claim relates only to the state law claims.

Andersen asserts that its third party complaint "does what Johnson's complaint failed to do—it brings the persons who were responsible for ITI's allegedly misleading financial statements which are at the heart of Johnson's complaint to this Court." Andersen points out that in connection with the engagement of Andersen to audit ITI's financial statements for the year ended August 31, 1982 (the primary financial statements underlying Johnson's complaint), Stern, Gockel and Malecki represented to Andersen that:

> We are responsible for the fair presentation in the financial statements of financial position, results of operations, and changes in financial position in conformity with generally accepted accounting principles.

(November 8, 1982 management representation letter, signed by Stern, Gockel and Malecki).

The third party defendants move to dismiss the third party complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).

---

1. Johnson paid $3,779,524.00 of that amount.

## II.

### A. Contribution under § 10(b) of the Securities and Exchange Act of 1934

The Supreme Court has recently held that there is an implied right of contribution in an action under § 10(b) of the Securities and Exchange Act of 1934. *Musick, Peeler & Garrett v. Employer's Insurance of Wausau*, — U.S. —, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993). Accordingly, ITI's principal argument—that "there is no right to contribution in a 10b–5 case"—fails.

ITI makes three other arguments which are addressed below.

### B. Andersen's "standing" to assert a 10b–5 claim

ITI contends that to have standing to assert a claim for contribution against a joint tortfeasor, a 10b–5 defendant must first establish itself as a seller or purchaser of securities. It is a basic principle of securities law that a plaintiff making a 10b–5 claim must be either a purchaser or seller of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). ITI argues that Andersen's claim for contribution in connection with its 10b–5 claim must be dismissed since Andersen neither purchased nor sold any securities.

There is no question that, as a general rule, only plaintiffs who have purchased or sold securities may bring a claim under § 10(b). However, *Blue Chip Stamps* cannot reasonably be read to apply to third party actions for contribution among joint tortfeasors. As a court in this District recently held on similar facts:

> This argument ignores the fact that Touche seeks not recompense for any direct harm, but rather contribution as an alleged joint tortfeasor for any harm plaintiffs can show resulted from the alleged market manipulation.

*Fields v. Oliver's Stores*, 1990 WL 276243 at *1 *2 (S.D.N.Y.1990) (holding that fact that defendant accounting firm had not purchased securities did not foreclose it from bringing a claim for contribution against joint tortfeasors).

None of the cases cited by ITI involve a claim for contribution among joint tortfeasors. As long as a 10b–5 defendant can establish a prima facie case that the third party defendant may also be liable for plaintiff's securities injury, the defendant need not establish that it is a purchaser or seller of securities to assert a claim for contribution against the third party.

Accordingly, ITI's "standing" argument fails.

### C. Any judgment in favor of Andersen against ITI, will reduce the value of any judgment in favor of Johnson

ITI argues that Andersen's claim for contribution should be dismissed because "any judgment in favor of Andersen against ITI will reduce the value of any judgment in favor of Johnson." It argues that since any amount ITI "pays" in contribution to Andersen will "necessarily reduce the value of any judgment in favor of Johnson" (because ITI is a wholly owned subsidiary of Johnson's), Andersen should not be permitted to assert a claim for contribution against ITI. ITI contends that allowing Andersen to assert a claim for contribution against ITI:

> would be tantamount to affording Andersen an *in pari delicto* defense against Johnson in the absence of any allegation that Johnson "bears substantially equal responsibility for the violations [it] seeks to redress." *Bateman Eichler, Hill Richards, Inc.*, 472 U.S. at 310–11, 105 S.Ct. at 2628–29.

The common-law defense of *in pari delicto* bars actions on the basis of the plaintiff's own culpability. In the context of the securities laws, the defense applies only where:

> (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11, 105 S.Ct. 2622, 2629, 86 L.Ed.2d 215 (1985).

It is true that if Andersen had actually asserted an *in pari delicto* defense against Johnson's claim, it would be required to allege that Johnson was at "equal fault" with it. *Id.* However, Andersen has asserted no such defense, nor is its claim for contribution against ITI "tantamount" to an *in pari delicto* defense. First, the claim for contribution is asserted against ITI, not Johnson. That plaintiff Johnson now owns ITI is fortuitous and does not change that fact. Moreover, if Andersen were to recover from ITI, the effect would not be to bar Johnson's claim—as it would be if Andersen were to successfully assert an *in pari delicto* defense against Johnson. Instead, it would simply reduce Johnson's overall recovery because of its liability for ITI's obligations. The connection between plaintiff Johnson and third-party defendant ITI does not change Andersen's claim for contribution from ITI into an *in pari delicto* defense against Johnson.

▮ Nor is there merit to ITI's assertion that "permitting Andersen to assert a claim for contribution against ITI in this case would clearly undermine the purpose of the securities laws." As the Court of Appeals stated in *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721 (2d Cir.1981):

> The goal of the securities laws is not just to compensate persons who have been defrauded but also to deter violations of those laws. This goal is advanced by a recognition of liability for contribution among joint offenders and by a recognition that liability does not depend on the plaintiff's having elected to proceed against all those who have offended.

*Id.* at 727 n. 7.

In sum, the fact that any amount ITI pays in contribution to Andersen may reduce the value of a judgment in favor of Johnson does not invalidate Andersen's claim for contribution against ITI.

### D. *Fed.R.Civ.P. 9(b)*

▮ ITI Holding, Stern and Gockel also move to dismiss Andersen's claim for contribution under Fed.R.Civ.P. 9(b) on the ground that it fails to allege fraud with sufficient particularity. According to the third party defendants, the complaint "provides no indication of the nature of each of the third-party defendant's alleged participation in any fraud" and "fails to plead with particularity facts from which it can be inferred that [they] acted with fraudulent intent."

Andersen responds that the particularity requirements are satisfied. However, the principal relevant allegations of the third party complaint state only:

> 9. Axel Johnson alleges that the financial statements of ITI did not fairly present the financial condition of ITI. If Johnson is correct, the Stock Purchase Agreement contained representations and warranties that were false and misleading, including those relating to the financial statements of ITI and undisclosed liabilities.

> 10. If Johnson is correct that the financial statements of ITI did not fairly present the financial condition of ITI, then, by their acts, practices and omissions in connection with the sale to Johnson of ITI's common stock, ITI, ITI Holding, Stern, Gockel, Malecki and Babcock violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder.

> 11. If Johnson is correct that the financial statements of ITI did not fairly present the financial condition of ITI, then the third-party defendants knowingly lent substantial assistance to the violation of § 10(b) and Rule 10b–5 which, according to the First Claim of Johnson's complaint, was committed by Andersen.

These allegations do not satisfy Rule 9(b) because they do not state "the circumstances constituting fraud ... with particularity." Fed.R.Civ.P. 9(b).

▮ It is true that Andersen's allegations in its memoranda of law and supporting affidavit are more detailed. For example, Andersen states:

> The third-party defendants are responsible for the failure to disclose the potential defective pricing liability alleged in Johnson's complaint. They represented that there were no violations of law and no loss contingencies that needed to be disclosed in those statements. Those representa-

tions—assuming the accuracy of Johnson's allegations—were false.

However, there is no such detail in the complaint itself and, since Rule 9(b) is a special pleading requirement, it cannot be satisfied with allegations in supporting documents. Moreover, group allegations against all third-party defendants are not sufficient. Each defendant is entitled to know from the complaint itself precisely what actionable fraud he is alleged to have committed.

Accordingly, Andersen's claim for contribution will be dismissed unless within 30 days it files an amended complaint specifying the actions of fraud attributable to each third party defendant.

### III.

The second claim of the third party complaint seeks indemnification from ITI Holding, Stern and Gockel for Andersen's potential liability under the state law claims asserted by Johnson.

■ Under New York law, a right to indemnification may exist even absent an express agreement between the parties. *See, e.g., Bellevue S. Assocs. v. HRH Constr. Corp.*, 78 N.Y.2d 282, 296, 574 N.Y.S.2d 165, 171, 579 N.E.2d 195 (1991). Implied indemnification "may be appropriate because of a separate duty owed the indemnitee by the indemnitor, or because one of the two parties is considered actively negligent or the primary wrongdoer." *Id.*

Interpreting New York law, the Second Circuit has distinguished between two circumstances in which there is an implied right to indemnification:

The first is where the special nature of a contractual relationship between the parties gives rise to the right (the "implied contract theory"); the second is a tort-based right "found where there is a great disparity in the fault of the two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other" ("implied in law indemnity").

*In the Matter of Poling Transp. Corp.*, 784 F.Supp. 1045, 1048 (S.D.N.Y.1992) (quoting *People's Democratic Republic of Yemen v.*

*Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir.1986)).

■ There is no implicit or explicit contractual right to indemnity in this case. Accordingly, Andersen must prove that it is entitled to an implied right of indemnification under the theory that "one of the tortfeasors has paid for a loss that was primarily the responsibility of the other."

■ An implied right to indemnity generally occurs only in situations which involve vicarious liability, that is, where the first defendant's liability is purely derivative and arises solely out of his relationship to the tortfeasor. This is not such a case. Johnson has charged Andersen with primary, not vicarious, liability. It contends that Andersen did not follow standard accounting procedures in conducting its audit of ITI and thus either intentionally or recklessly failed to discover and disclose the misrepresentations contained in those statements. That Andersen is not entitled to indemnification in this case is clearly illustrated by the New York State Appellate Division's recent holding in *Gray Line Sight–Seeing Ass'n, Inc. v. Porte, Brown and Company* (N.Y.Sup.Ct. 1st Dept., Jan. 8, 1993 (Greenfield, J.)), N.Y.L.J., Jan. 12, 1993 at 21. In that case, a corporate plaintiff sued its accountants for negligence, malpractice, breach of contract, and breach of fiduciary duty arising out of the accountants' failure to discover an alleged scheme to defraud the plaintiff perpetrated by its former president. The accountants commenced a third-party action against the former president seeking, *inter alia*, indemnification on the ground that any damages suffered by the plaintiff were caused by the former president, and not by the accountant. In dismissing the accountants' indemnification claim, the court held:

As previously noted, Sheridan's liability to Gray Line, if any, is based upon Sheridan's alleged fraudulent activity and conversion of Gray Line's funds for his own use. [The accountant's] liability, on the other hand, is based upon their failure to discover Sheridan's alleged scheme and the financial irregularities resulting therefrom. . . . . Thus, [the accountant's] liability to Gray Line, if any, is due and owing to their own

wrongdoing which contributed to the loss suffered by Gray Line, and is not purely vicarious owing to any fault attributable to Sheridan. Therefore, [the accountant] cannot state a cause of action against Sheridan for indemnification.

*Id.* at 22.

*Mas v. Two Bridges Associates,* 75 N.Y.2d 680, 689, 555 N.Y.S.2d 669, 673, 554 N.E.2d 1257, 1261 (1990), upon which Andersen places principal reliance, does not support its position.[2] In *Mas,* the plaintiff was injured when she jumped from an elevator which had fallen and come to rest between floors. The jury found that the landlord had violated its duty to maintain the premises in a reasonably safe condition. The landlord had contracted with an elevator maintenance company to maintain and repair the elevators, and it brought a claim for indemnification against that company. The court ruled for the landlord. However, the key factor in that case was that the elevator maintenance company had contracted to assume full responsibility for maintenance. The court stated:

As between the owner and one voluntarily undertaking responsibility for maintenance, however, the party assuming the contractual duty is liable to the owner for the damages the owner must pay.

*Mas,* 555 N.Y.S.2d at 673, 554 N.E.2d at 1261. In the case at hand, no person or entity affiliated with ITI has or indeed could have assumed responsibility for Andersen's duty to conduct a comprehensive audit of ITI's financial records.

Andersen's claim for indemnification is dismissed.

## IV.

Andersen's third claim is that ITI Holding, Stern and Gockel, were unjustly enriched "by the consideration they received from Johnson for the sale of their ITI stock to Johnson."

■ To recover on a theory of unjust enrichment, there must first be enrichment, *see Milman v. Denniston,* 271 A.D. 988, 68 N.Y.S.2d 325 (2d Dep't), *appeal dismissed,*

297 N.Y. 470, 74 N.E.2d 178 (1947), and the enrichment must be unjust, *McGrath v. Hilding,* 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 606, 363 N.E.2d 328, 331 (1977). Elaborating on this basic proposition, the Second Circuit has held that:

To recover on a theory of unjust enrichment a plaintiff must prove that the defendant was enriched, that such enrichment was at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to the plaintiff.

*Dolmetta v. Uintah Nat'l Corp.,* 712 F.2d 15, 20 (2d Cir.1983).

■ Andersen practically concedes that the allegations in the complaint do not meet these requirements by utterly abandoning them in its memoranda of law. In any event, the complaint alleges that Johnson, not Andersen, is the victim of the alleged unjust enrichment. It states that:

If Andersen is adjudged liable to plaintiff in connection with Johnson's claims that ITI defectively priced its government defense contracts and/or subcontracts, third-party defendants ITI Holding, Stern and Gockel have been unjustly enriched *by the consideration they received from Johnson for the sale of their ITI stock to Johnson.*

(emphasis added). These allegations do not meet the *Dolmetta* test.

To salvage the claim, Andersen articulates an entirely different version of the claim in its memoranda of law, basing the allegation on the "possibility" of Johnson obtaining a judgment against Andersen in the future, rather than on the past occurrence of Johnson's purchase of ITI stock. Andersen's present argument is that if it were to be forced to pay damages to Johnson, then the third party defendants—who are the real wrongdoers and accordingly should be the ones paying damages—would be unjustly enriched.

■ As a preliminary matter, such a claim, even if valid, is not alleged in the

**2.** In fact, *Mas* itself states that where the third party plaintiff's liability is based on primary negligence, "there may be contribution in an appro-
priate case but not indemnity." *Mas v. Two Bridges Associates,* 555 N.Y.S.2d at 673, 554 N.E.2d at 1261.

complaint. However, even if this version had been properly pleaded, no cause of action for unjust enrichment lies for hypothetical future liabilities. To be actionable, a claim for unjust enrichment requires that the defendant already has been enriched. *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d at 20. Finally, Andersen will not be liable to Johnson unless Johnson can prove its allegations of wrongdoing. If Johnson can do so, there will be nothing "unjust" about Andersen's liability.

Accordingly, Andersen's unjust enrichment claim fails.

### Conclusion

Andersen's claims for indemnification and unjust enrichment are dismissed. Andersen's claim for contribution will be dismissed unless within 30 days it files an amended complaint specifying the actions of fraud attributable to each third party defendant.

It is so ordered.