■ MICHAEL WAGNER et al., Respondents-Appellants, v GRINNELL HOUSING DEVELOPMENT FUND CORPORATION, Appellant-Respondent and Third-Party Plaintiff-Appellant, et al., Defendant. ARCHER ELEVATOR COMPANY, INC., Third-Party Defendant-Respondent. [688 NYS2d 551] —Order, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered March 5, 1998, denying defendant and third-party plaintiff Grinnell's motion for summary judgment on its third-party claim against third-party defendant Archer Elevator Company and denying plaintiffs' cross-motion for summary judgment against Grinnell, unanimously modified, on the law, to grant plaintiffs' cross-motion for summary judgment against Grinnell as to liability, and otherwise affirmed, without costs.

Plaintiff Michael Wagner, while employed by Archer as an elevator mechanic in the building owned by Grinnell, was injured in June 1992 when he was pinned between beams at the top of the elevator shaft and the roof of the elevator compartment upon which he was situated while doing repairs. At plaintiff's request, a co-worker pressed the up button "a little bit," but the elevator ascended almost a full story, reaching within 18 inches of the top of the shaft. Plaintiff testified that as he ascended, he never heard, as he should have, the counterweight, a device controlling the length of the ascent, hit the buffer, controlling the depth of a descent, at the bottom of the shaft. Plaintiff's expert established that standards adopted in the New York City Administrative Code require a maximum "counterweight runby"—the distance between the descending counterweight and the buffer—of 36 inches, meaning that the elevator cannot travel more than 36 inches beyond the terminal top floor if the cables are the appropriate length. Plaintiff's expert surmised that the length of the cable had not been altered in 1948 when the elevator route, originally to the rooftop landing above the eighth floor, was reduced to allow elevator access only to the eighth floor, so that the too-long

cable allowed the elevator compartment to rise too high. Grinnell had been a party to a 1988 elevator maintenance agreement with Archer, which initially prohibited Archer from reshackling or shortening the cables. After a March 1992 notice of violation from the Department of Buildings indicating, *inter alia*, that the device causing an automatic power shutoff when the elevator passed the top terminal landing should be moved from the roof landing to the eighth floor, the agreement was modified to require Archer to adjust floor stops and reshackle the counterweight cables. It was while engaged in this work that plaintiff was injured.

Plaintiff sued Grinnell in negligence and for breach of the nondelegable duty to maintain the building in good repair. Grinnell impleaded Archer on theories of contractual and common-law indemnification, moving for summary judgment against Archer but not against plaintiff. Archer cross-moved for summary judgment against Grinnell, as did plaintiff. The IAS Court, finding that the maintenance agreement did not provide for indemnification, and there were questions of fact as to the cause of the accident, denied Grinnell's motion against Archer. Finding questions of fact whether plaintiff's injuries resulted from Grinnell's negligence in repair of the building, or from Archer's negligence as plaintiff's employer, the court also denied plaintiff's cross-motion as against Grinnell.

In the latter regard, we disagree. The relative liabilities of the building owner and the maintenance company/employer are appropriately matters for trial, but that outcome is not dispositive of the building owner's obligation to maintain the premises as to plaintiff. The very fact that the elevator traveled so far beyond the terminal floor compels the conclusion that New York City's standards were violated, that the operation of the elevator to that extent was illegal, and the defect proximately caused the injury (*Rodriguez v Forest City Jay St. Assocs.*, 234 AD2d 68). Grinnell's duty to maintain the premises extends to elevator repair (*Ortiz v Fifth Ave. Bldg. Assocs.*, 251 AD2d 200; *Camaj v East 52nd Partners*, 215 AD2d 150), which remains nondelegable as between the building owner and the injured party, despite any contractual delegation of maintenance obligations by the owner to another party (*Mas v Two Bridges Assocs.*, 75 NY2d 680; *Camaj v East 52nd Partners*, *supra*). The building owner here had notice of the defect, which was structural, as evidenced by the fact of the Administrative Code violation, and of the dangers resulting therefrom (*cf.*, *Deebs v Rich-Mar Realty Assocs.*, 248 AD2d 185). Grinnell has failed to submit competent evidence establishing the existence

of factual issues in this regard, entitling plaintiff to summary judgment as to liability as against it. Concur—Ellerin, P. J., Tom, Wallach and Saxe, JJ.,