Lamela v Verticon, Ltd. (2020 NY Slip Op 04214)





Lamela v Verticon, Ltd.


2020 NY Slip Op 04214


Decided on July 23, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 23, 2020

529714

[*1]James Lamela et al., Plaintiffs,
v
Verticon, Ltd., et al., Defendants and Third- Party Plaintiffs- Respondents, and Cooler Panel Pros, Inc., Respondent, et al., Defendant; Lamela & Sons, Inc., Third-Party Defendant- Appellant.

Calendar Date: May 18, 2020

Before: Garry, P.J., Clark, Aarons, Pritzker and Colangelo, JJ.


Smith, Sovik, Kendrick & Sugnet, PC, Syracuse (Anthony R. Brighton of counsel), for third-party defendant-appellant.
Goldberg Segalla LLP, Albany (William J. Greagan of counsel), for defendants and third-party plaintiffs-respondents.
Penino & Moynihan, LLP, Syracuse (Henry L. Liao of counsel), for Cooler Panel Pros, Inc., respondent.



Pritzker, J.
Appeal from an order of the Supreme Court (Gilpatric, J.), entered June 13, 2019 in Ulster County, which granted a motion by defendant Verticon, Ltd. for summary judgment dismissing third-party defendant's cross claims.
Plaintiffs were injured when an unsecured wall collapsed, displacing a motorized scissor lift that plaintiffs operated while performing demolition work on a construction site. During the course of their work, plaintiffs moved the lift in close proximity to the unsecured wall. Plaintiffs were employed by third-party defendant, Lamela & Sons, Inc. (hereinafter Lamela), and the accident occurred in a warehouse that was owned by defendant Satin Realty Associates, LLC and leased to defendant Satin Fine Foods, Inc. (hereinafter collectively referred to as Satin). Defendant Verticon, Ltd. was the general contractor and contracted with Lamela, as well as defendant Accurate Refrigeration Design, LLC, to serve as subcontractors. Employees of Accurate's subcontractor, defendant Cooler Panel Pros, Inc., were constructing the wall that collapsed when the accident occurred. Plaintiffs commenced this action alleging negligence and violations of the Labor Law.
In July 2014, Supreme Court granted plaintiffs' motion for partial summary judgment, finding Verticon and Satin strictly liable pursuant to Labor Law § 240 (1). Defendants, thereafter, agreed to a settlement of plaintiffs' claims — specifically, defendants and plaintiffs agreed on a total payment of $3.2 million, to be apportioned under an agreement by which Verticon and Satin would pay $2,199,999,[FN1] Accurate would pay $1 and Cooler would pay $1 million. Although Lamela did not participate in or contribute to the settlement, its counsel was present at the time that the settlement was announced and objected. Releases were thereafter signed providing that plaintiff James Lamela would receive $500,000 and plaintiff Robert Lamela would receive $2.7 million.
Subsequently, Verticon and Satin filed an amended third-party complaint seeking contractual indemnity against Lamela based upon the indemnification clause contained in the contract, which required Lamela to indemnify both Verticon and Satin. Lamela answered the amended third-party complaint and, among other things, asserted cross claims against Verticon seeking common-law indemnity and contribution. Lamela then moved for summary judgment dismissing the amended third-party complaint, and Verticon and Satin cross-moved for summary judgment on the indemnity claim. Verticon withdrew its motion prior to decision and Supreme Court granted that aspect of the motion in which Satin sought contractual indemnity and denied Lamela's motion for summary judgment. Lamela appealed, and this Court affirmed, noting in dicta that "the fact that Satin is entitled to enforcement of the contract by seeking payment from Lamela does not operate to negate or determine Lamela's cross claims against the other parties" (162 AD3d 1268, 1272 [2018]).
Following the appeal, Lamela remitted approximately $2 million to Satin, thereby satisfying its contractual indemnity obligation to that entity.[FN2] Soon thereafter, Verticon moved for summary judgment seeking dismissal of Lamela's cross claims asserting, among other things, that the indemnification provision contained in the contract between Lamela and Verticon bars Lamela from seeking common-law indemnity. Supreme Court granted Verticon's motion and dismissed Lamela's cross claims. Lamela appeals.
Although this appeal stems from the dismissal of Lamela's cross claim seeking common-law indemnity, we would be remiss not to address the background of this case relative to this issue. As made abundantly clear by Lamela, both in this appeal and the prior appeal before this Court (id.), Lamela is dissatisfied with the allocation of the settlement proceeds between Satin and Verticon and how the allocation impacted Lamela's indemnity obligation to Satin. Lamela's claim stems from its belief that the insurance company, which represented both Satin and Verticon, acted in bad faith by apportioning the larger share of the settlement to Satin, which was concededly not negligent and only vicariously liable as the owner (see Labor Law § 240 [1]). Lamela asserts that this is unfair because it posits that if Verticon was actually negligent, and if an accurate — larger — share of the settlement was allocated to Verticon based upon its negligence, Lamela's contractual indemnity obligation to Satin would have been decreased proportionately. However, even if all of this were true, we cannot fashion a common-law indemnity right where none exists, since we would be weaving an obligation out of whole cloth, one that was neither bargained for nor is permissible under the law. Here, Lamela's novel upstream common-law indemnity claim fails for two reasons: (1) indemnification is governed by the contract and only goes one way — in favor of Verticon; and (2) Lamela is seeking indemnity for a voluntarily assumed contractual obligation flowing to Satin, rather than one imposed vicariously, or otherwise, by operation of law. As such, Supreme Court properly granted Verticon's motion for summary judgment and dismissed Lamela's cross claim for common-law indemnity.
"Indemnification is the right of one party to shift the entire loss to another and may be based upon an express contract or an implied obligation. The principle of common-law, or implied indemnification, permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party" (Genesee/Wyoming YMCA v Bovis Lend Lease LMB, Inc., 98 AD3d 1242, 1244 [2012] [internal quotation marks, brackets and citations omitted]). "Common-law indemnification is generally available 'in favor of one who is held responsible solely by operation of law because of his [or her] relation to the actual wrongdoer'" (McCarthy v Turner Constr., Inc., 17 NY3d 369, 375 [2011], quoting Mas v Two Bridges Assoc., 75 NY2d 680, 690 [1990]).
First, we address the one-way nature of the indemnity obligation at issue. In support of its motion for summary judgment, Verticon submitted the construction contract,[FN3] dated March 2, 2011, between Verticon and Lamela, which provides for indemnity flowing from Lamela to Verticon, specifically stating, "To the fullest extent permitted by law, [Lamela] shall indemnify, defend and save harmless [Verticon] . . . against any and all suits [or] actions . . . arising from the use or operation by [Lamela] of construction equipment, tools, scaffolding or facilities furnished to [Lamela] to perform the [w]ork." The provision, as expected, does not provide for indemnification flowing the other way, from Verticon to Lamela, as is being sought by Lamela. Thus, as "the subject of indemnification [is] clearly contemplated and expressly addressed by [Lamela and Verticon] in their contract, . . . there [can] only be a one-way obligation to indemnify by [Lamela] as the indemnitor, and any reciprocal obligation is extinguished" (Service Sign Erectors Co. v Allied Outdoor Adv., 175 AD2d 761, 763 [1991], appeal dismissed 79 NY2d 823 [1991], lv denied 79 NY2d 754 [1992]; see Rosado v Proctor & Schwartz, 106 AD2d 27, 30 [1984], affd 66 NY2d 21 [1985]; Honeywell, Inc. v J.P. Maguire Co., Inc., 1999 WL 102762, *6, 1999 US Dist LEXIS 1872, *17-18 [SD NY, Feb. 24, 1999, No. 93-CIV-5253 (DAB/HBP)]; Bay Bridge Const. Corp. v Hirani Const. Mgt., Inc., 2013 WL 6217885, *10 [Sup Ct, NY County, Nov. 27, 2013, No. 653031/2011]).
The concurrence disagrees with this concept, citing Hawthorne v South Bronx Community Corp. (78 NY2d 433 [1991]) and Felker v Corning Inc. (90 NY2d 219 [1997]). These cases, however, are inapposite, as they do not reach the issue presented in the instant case, as well as in Service Sign Erectors Co. — whether a party to a contract who is subject to a contractual indemnity obligation flowing one way can seek common-law indemnity flowing the other way. Rather, Hawthorne deals with a subcontractor who employed an injured plaintiff. The owner of the property and the general contractor were liable under Labor Law § 240 (1) and the subcontractor/employer was liable to the owner and the general contractor under principles of both common-law and contractual indemnity (Hawthorne v South Bronx Community Corp., 78 NY2d at 425).[FN4] The salient issue in that case was whether these principles of indemnity could co-exist for the contractually benefited party, and the Court of Appeals found that they could (id. at 437-438). Hawthorne does not, however, determine whether a subcontractor/employer who has voluntarily assumed a contractual liability to indemnify the general contractor can nevertheless go upstream and seek common-law indemnity from the general contractor. Similarly, Felker did not involve this issue in the instant appeal, but rather answered the question of whether a contractual agreement by a subcontractor to indemnify a general contractor is superseded by any common-law right to indemnity owed to the general contractor by the subcontractor, which the Court of Appeals found that it did not (Felker v Corning Inc., 90 NY2d at 226-227). Simply put, Hawthorne and Felker dealt with an entirely different issue, and not one case cited by the concurrence supports the availability of common-law indemnity to an indemnitor against the very party it expressly agreed to contractually indemnify.
Second, common-law indemnity is not the appropriate relief here because Lamela is not responsible by operation of law (see McCarthy v Turner Constr., Inc., 17 NY3d at 375; Mas v Two Bridges Assoc., 75 NY2d at 690); rather, its payment to Satin was based solely upon a voluntarily assumed obligation that it undertook by virtue of the contract. There has been no case cited that permits common-law indemnity under this scenario. Although we are mindful that Lamela's motivation for seeking common-law indemnity stems from its concern that the settlement was unfairly apportioned,[FN5] to attempt to remedy this by way of common-law indemnity is unavailing.
Lamela's remaining arguments lack merit. Specifically, Lamela's argument that this Court's decision in the prior appeal mandates reversal of Supreme Court's order misstates our prior decision. To that end, this Court stated that "the fact that Satin is entitled to enforcement of the contract by seeking payment from Lamela does not operate to negate or determine Lamela's cross claims against the other parties" (162 AD3d at 1272). This statement, however, certainly did not determine whether Lamela's cross claims, that were not before this Court, had merit, but rather correctly noted that they were not foreclosed by virtue of the decision. Additionally, despite Lamela's claims, General Obligations Law § 5-322.1 does not inure to the benefit of Lamela at this time because contractual indemnitee Satin was found strictly liable, and there is no claim that it was otherwise at fault, and Verticon's right to indemnity is not before us at this juncture. Further, to the extent that Lamela seeks subrogation, that claim was never asserted in its cross claims (see CPLR 3013; compare Archer-Vail v LHV Precast Inc., 168 AD3d 1257, 1258-1259 [2019]). Finally, contrary to Lamela's contention, Supreme Court did not grant relief to Cooler, but simply indicated, in dicta, that such a claim for contribution would not be meritorious (see Sherb v Monticello Cent. Sch. Dist., 163 AD3d 1130, 1132 [2018]).
Clark, Aarons and Colangelo, JJ., concur.
Garry, P.J. (concurring).
I concur that third-party defendant, Lamela & Sons, Inc. (hereinafter Lamela), may not seek common-law indemnification from defendant Verticon, Ltd., but solely on the ground that the payment for which Lamela seeks indemnification did not arise from its discharge of a duty to plaintiffs that Verticon should have discharged, but, rather, from Lamela's contractual indemnification obligation to defendants Satin Realty Associates, LLC and Satin Fine Foods, Inc. (hereinafter collectively referred to as Satin). I disagree with the other ground stated by the majority as a basis for precluding Lamela's cross claim for common-law indemnification.[FN6]
First, briefly reviewing the background of the indemnification claim, plaintiffs were employees of Lamela, a subcontractor on a construction project on property owned by Satin, and Verticon was the general contractor, with contractual responsibility for the supervision and coordination of the work and for safety precautions and programs. Verticon's representative admittedly directed Lamela to carry out its demolition work in the same location where another subcontractor's employees were erecting walls, was present while the walls were being erected, and periodically checked the safety of the work. While plaintiffs were working as directed in this location, on top of an elevated scissor lift, one of the newly erected and improperly secured walls fell onto the lift, knocking it over and causing plaintiffs to fall to the floor.
In plaintiffs' ensuing action for negligence and violations of the Labor Law, plaintiffs and defendants ultimately agreed to a settlement by which, among other things, Verticon and Satin paid plaintiffs approximately $2.2 million, of which $2 million was apportioned to Satin, to which Lamela owed a contractual duty of indemnification. Lamela was not a party to the settlement, but was present in court when it was reached and strenuously objected, both at that time and consistently thereafter. As the majority notes, in Lamela's view, the settlement was improperly designed to benefit Hartford Casualty Insurance Company — the insurer for both Verticon and Satin — by shifting the lion's share of any liability arising from Verticon's negligence to the non-negligent Satin. Lamela contends that the improper effect of this apportionment was to require Lamela to indemnify Satin — and, thus, in effect, Verticon and Hartford — for Verticon's negligence.
Unfortunately, this underlying contention was not before this Court in a manner that we could meaningfully address when it was last posed, and now, still, remains beyond our purview. When this matter was previously brought before this Court, we held that Lamela's contractual indemnification obligation to Satin was valid, and that no procedural bar prevented Lamela from pursuing its cross claims against Verticon (162 AD3d 1268, 1270-1272 [2018]). The merits of these cross claims were not before us.[FN7] Our prior determination expressly noted in dicta following the dispositive finding — but nonetheless in considerable detail — that "vehement arguments" regarding the fairness of the settlement had been asserted that we could not then reach or resolve (id. at 1271-1272). We noted that, "[a]s Lamela argues, an apportionment of fault may be appropriate and necessary," that "Lamela contends that the stipulation was improperly constructed to benefit [the insurance carrier]," and that "[t]here may indeed be novel issues presented" that had not yet been addressed (id. at 1271-1272). Upon return to Supreme Court, however, these issues were again not reached; it appears from the record that, following our decision, the court scheduled an apportionment hearing, but the hearing did not take place because Verticon's motion for summary judgment intervened. In effect, Lamela now seeks to use its indemnity claim as an indirect way of resolving its objections to the alleged unfairness of the settlement. For the reasons that follow, I agree with the majority that common-law indemnification is not the appropriate means to achieve this purpose.
The equitable remedy of common-law indemnification — also known as implied indemnification — serves to prevent unjust enrichment when a party has discharged a duty to an injured third party that, in fairness, should have been discharged by another party that owed the same duty (see McDermott v City of New York, 50 NY2d 211, 217 [1980]; Murray Bresky Consultants, Ltd v New York Compensation Manager's Inc., 106 AD3d 1255, 1258 [2013]; Westbank Contr., Inc. v Rondout Val. Cent. School Dist., 46 AD3d 1187, 1189 [2007]). The remedy is premised upon an implied contract that shifts the loss from the party that paid it to the party that should have done so and, thus, "plac[es] the obligation where in equity it belongs" (McDermott v City of New York, 50 NY2d at 217). Because the doctrine's purpose is to achieve fairness between two parties that share a common duty to the injured party, it is not available when a claim is not based upon the inequitable discharge of such a duty (see e.g. State of N.Y. Workers' Compensation Bd. v Madden, 119 AD3d 1022, 1024-1025 [2014] [Workers' Compensation Board could seek common-law indemnification from the trustees of an insolvent health insurance trust for funds the Board paid to employees covered by the trust, as both owed duties to the covered employees, but could not recover from professionals employed by the trust, whose duties were owed to the trust rather than the employees]; Germantown Cent. Sch. Dist. v Clark, Clark, Millis & Gilson, 294 AD2d 93, 98-99 [2002], affd 100 NY2d 202 [2003] [school district could not seek common-law indemnification from an asbestos abatement company that failed to completely remove asbestos from the district's property for the district's costs in completing the removal, because the company did not share the district's direct duty to students and employees]).
Here, Lamela and Verticon owed no such common duty. To the extent that Verticon was negligent, it owed a duty to plaintiffs to compensate them for their injuries. Lamela, however, had no such duty to compensate plaintiffs. Rather, the payment for which it seeks indemnification was made to satisfy its separate, voluntarily assumed contractual obligation to indemnify Satin — an obligation that Verticon did not share. Thus, Lamela's payment did not arise from any shared duty that, in fairness, Verticon should have assumed instead of Lamela, and Lamela was not "held responsible solely by operation of law because of [its] relation to the actual wrongdoer" (Mas v Two Bridges Assoc., 75 NY2d 680, 690 [1990]; accord McCarthy v Turner Constr., Inc., 17 NY3d 369, 375 [2011]). Accordingly, I agree with the majority that the equitable principles that underlie common-law indemnification do not apply, and that the remedy is not available (see State of N.Y. Workers' Compensation Bd. v Madden, 119 AD3d at 1024; Germantown Cent. Sch. Dist. v Clark, Clark, Millis & Gilson, 294 AD2d at 98-99; compare Murray Bresky Consultants, Ltd v New York Compensation Manager's Inc., 106 AD3d at 1258-1259).
However, I do not agree that Lamela's contractual obligation to indemnify Verticon extinguished its ability to seek common-law indemnification from Verticon. The Court of Appeals has squarely held that "the mere existence of [a contractual] indemnity provision does not indicate an intent to replace common-law liability with contractual liability" (Hawthorne v South Bronx Community Corp., 78 NY2d 433, 437 [1991]; see Felker v Corning Inc., 90 NY2d 219, 226 [1997]). I see no reason why, if circumstances were otherwise appropriate, the same principle should not hold true simply because the party who seeks common-law indemnification is the same party who promised contractual indemnification to the other party.
Nevertheless, the remedy of common-law indemnification is unavailable to Lamela, for the reasons previously discussed. Thus, the substantive issue that underlies Lamela's cross claim — that is, the alleged bad faith of Verticon, Satin and Hartford in obtaining full contractual indemnification from Lamela by apportioning most of the settlement payment to Satin rather than to Verticon — is, again, not properly before this Court. Accordingly, I concur that Lamela's cross claim seeking common-law indemnification was properly dismissed.
ORDERED that the order is affirmed, with one bill of costs.



Footnotes

Footnote 1: Of this sum, Verticon agreed to pay approximately $200,000 and Satin agreed to pay $2 million.

Footnote 2: Notably, Lamela has not paid anything to Verticon. In fact, Verticon represented at oral argument that if Lamela's cross claims were dismissed, it would discontinue its contractual indemnity action. Should Verticon pursue contractual indemnity against Lamela, as conceded by Verticon at oral argument, any negligence on the part of Verticon would be deducted proportionately from the amount that Lamela owed.

Footnote 3: The contract is a form document entitled "Standard Form of Agreement Between Contractor and Subcontractor" created by The American Institute of Architects.

Footnote 4: We do not dispute that it is not only common but also proper for a party who is benefited by a contractual indemnity clause to alternatively plead common-law indemnity. This is simply not the issue here.

Footnote 5: Notably, while vociferously objecting to the settlement, Lamela never sought to set it aside or initiate any kind action directed thereto.

Footnote 6: I agree with the majority that Lamela's remaining claims regarding the effect of this Court's prior decision, General Obligations Law § 5-322, subrogation and the liability of defendant Cooler Panel Pros, Inc. lack merit.

Footnote 7: Verticon had initially joined Satin in seeking contractual indemnification, but did not pursue this relief because Supreme Court had determined that there were triable issues of fact regarding its negligence (id. at 1270).