OPINION OF THE COURT
Richard M. Platkin, J.
The above-captioned actions are subject to coordination orders issued by the Litigation Coordinating Panel. The State of New York Workers’ Compensation Board (WCB), which is the plaintiff in all three actions, moves for leave to amend its complaints, principally in relation to alleging claims for implied indemnification.
Background
A, The Subject Actions
New York State Workers’ Compensation Bd. v Compensation Risk Mgrs., LLC (index No. 10288-09) (CRM) is an action brought by the WCB in its capacity as the governmental entity charged with administration of the Workers’ Compensation Law and as the successor to eight group self-insured trusts (GSITs) that had been administered by Compensation Risk Managers, LLC (CRM): the Healthcare Industry Trust of New York (HITNY trust or the trust); the Wholesale and Retail Workers’ Compensation Trust of New York; the Transportation Industry Workers’ Compensation Trust; the Trade Industry Workers’ Compensation Trust for Manufacturers; the Real Estate Management Trust of New York; the Public Entity Trust of New York; the New York State Cemeteries Trust; and the Elite Contractors Trust of New York (collectively the trusts). Two groups of defendants remain in the CRM action: certain individuals allegedly associated with CRM (CRM individuals); and the former trustees of the HITNY trust (HITNY trustees).
New York State Workers’ Compensation Bd. v SGRisk, LLC (index No. 4620-11) (UHY) is a related action commenced against two companies that provided professional and technical services to the trusts: SGRisk, LLC (SGRisk), an actuarial firm, and UHY, LLP (UHY), an independent accounting firm that audited and certified financial statements of the trusts. Defendants’ pre-answer motions to dismiss were granted in part and denied in part by this court on March 1, 2013 (38 *686 Misc 3d 1229[A], 2013 NY Slip Op 50338[U] [2013]), and that ruling was affirmed substantially on appeal (116 AD3d 1148 [3d Dept 2014]). The WCB and SGRisk then entered into a settlement agreement, leaving UHY as the sole defendant.
New York State Workers’ Compensation Bd. v Compensation Risk Mgrs., LLC (index No. 5966-09) (HITNY member action) is an action commenced by former employer-members of HITNY trust. Pursuant to a stipulation that was so-ordered on June 13, 2014, the WCB was assigned the claims of the named plaintiffs, except those alleged against the defendant insurance brokers, which were severed and made the subject of a separate, coordinated action (Belair Care Center, Inc. v Cool Ins. Agency, Inc., Albany County, index No. 1476-14). The HITNY trustees and UHY remain as defendants in this action.
At a status conference held on January 22, 2016, counsel to the WCB and the CRM individuals represented to the court that they had agreed in principle to the terms of a settlement. By letter dated February 4, 2016, the WCB formally withdrew the branches of the pending motions in CRM and the HITNY member action seeking relief against the CRM individuals. This coordinated decision and order follows.
B. The Instant Motions
The WCB moves for leave to amend its complaints. Specifically, the WCB seeks to: (1) amend the second amended complaint in CRM to allege a cause of action for common-law indemnification against the HITNY trustees; (2) amend the complaint in UHY to allege a cause of action for common-law indemnification against UHY and to update the factual allegations pertaining to the trusts’ deficits; and (3) amend the fourth amended complaint in HITNY member action to amplify the allegations supporting the indemnity claim against the HITNY trustees and UHY.
Analysis
A motion for leave to amend a pleading should be freely granted, provided that there is no prejudice to the nonmoving party and the amendment is not plainly lacking in merit (CPLR 3025 [b]; Smith v Haggerty, 16 AD3d 967, 967-968 [3d Dept 2005]). The opposition of UHY and the HITNY trustees rests principally on the contention that the proposed indemnity claims are patently lacking in merit.
The following legal principles govern a claim for implied indemnity:
*687 “Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other. Generally, it is available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer, but authorities have noted that the principle is not . . . limited to those who are personally free from fault . . .
“The purpose of all contribution and indemnity rules is the equitable distribution of the loss occasioned by multiple defendants. In furtherance of that purpose the courts have granted relief in a variety of cases in favor of the party who, in fairness, ought not bear the loss, allowing it to recover from the party actually at fault. They have found indemnity appropriate because of a separate duty owed the indemnitee by the indemnitor (thus the indemnitee may recover for the wrong to it), because there is a great difference in the gravity of the fault of the two tort-feasors, or because the duties owed to the injured plaintiffs and causing injury are disproportionate.” (Mas v Two Bridges Assoc., 75 NY2d 680, 690-691 [1990] [internal quotation marks and citations omitted].)
In other words, “[t]he underpinning [of] indemnity actions is the prevention of unjust enrichment. In cases where such unfairness would arise from the assumption by a third party of another’s debt or obligation, ‘a contract to reimburse or indemnify is implied by law’ ” (State of New York v Stewart’s Ice Cream Co., 64 NY2d 83, 88 [1984], quoting Brown v Rosenbaum, 287 NY 510, 519 [1942]; see Raquet v Braun, 90 NY2d 177, 183 [1997], quoting Mas at 690 [“key element... is not a duty running from the indemnitor to the injured party, but rather is a ‘separate duty owed the indemnitee by the indemnitor’ ”]).
In prosecuting the above-captioned actions, the WCB sues in three separate and distinct capacities. CRM and UHY are brought by the WCB in its capacities as the governmental entity charged with the administration of the WCL and as successor to the trusts. In the HITNY member action, the WCB sues principally as the assignee of the claims of former members of the HITNY trust. Accordingly, the court must consider the availability of implied indemnity in each of these capacities.
*688 A. Successor
The proposed indemnity claims in CRM and UHY are plainly lacking in merit insofar as they are brought by the WCB as successor to the trusts. “As the successor, [the WCB] stands in the shoes of the trust [s], but, like an assignee, does not obtain any greater rights than those originally possessed; accordingly, plaintiff is only entitled to indemnification on this basis if the trust [s] would have had such a claim” (State of N.Y. Workers’ Compensation Bd. v Madden, 119 AD3d 1022, 1024 [3d Dept 2014]). Looking to the reality and essence of the proposed causes of action (Brick v Cohn-Hall-Marx Co., 276 NY 259, 264 [1937]), it is apparent that the duties relied upon by the WCB to support its claim of implied indemnity are direct duties allegedly owed by defendants to the trusts, rather than common duties to third parties that were discharged by the trusts (see Madden, 119 AD3d at 1024). Under these circumstances, a claim of implied indemnity is not available.
B. Governmental Capacity
In Madden, the Third Department held that the trustees of a GSIT shared with the WCB “a common duty to the covered employees to ensure that the [GSIT] maintained adequate reserves such that its assets would cover its liabilities” (id. at 1025). On the other hand, Madden sustained the dismissal of a claim for implied indemnity against the professionals who rendered legal, accounting and auditing services to a GSIT: “Relative to the professional defendants, plaintiff does not claim that they had any duty in common with plaintiff’s statutory obligation to maintain the trust’s solvency; instead, the complaint alleges that the professional defendants owed duties to the trust to provide professional auditing, accounting and legal services” (id. at 1024).
The Third Department’s precedent in Madden is binding upon this court, and the HITNY trustees have failed to offer any meaningful basis upon which to distinguish the indemnity allegations of the proposed amended complaint in CRM from those that survived the motion to dismiss in Madden. In light of the potential merit associated with the proposed claim and in the absence of any demonstrated prejudice sufficient to warrant denial of the motion, the WCB’s motion for leave to its complaint in CRM to allege, in its governmental capacity, a cause of action for implied indemnity against the HITNY trustees is granted.
Similar considerations compel the conclusion that it would be futile to allow the WCB to amend its complaint in UHY to *689 allege a cause of action for common-law indemnification. While the WCB cites myriad duties allegedly imposed upon UHY by the Workers’ Compensation Law, attendant regulations, the governing documents of the trusts and the service agreements between the trusts and its group administrator, the proposed pleading fails to allege a legal duty on the part of UHY—a public accounting firm that rendered auditing services to the trusts—in common with the WCB’s “statutory obligation to maintain the trust’s solvency” (Madden, 119 AD3d at 1024). For the most part, the duties alleged by the WCB in support of its proposed indemnity claim in UHY were raised in the Madden complaint and in the filings made by the WCB in opposition to the various motions to dismiss. In seeking to distinguish Madden and identify a duty on the part of UHY in common with the WCB’s statutory obligation to maintain the trusts’ solvency, the WCB now emphasizes 12 NYCRR 317.8, a regulation promulgated to implement the provisions of the Workers’ Compensation Law pertaining to GSITs, which was not before the Court in Madden.
The cited regulation, entitled “Integrity of the group self-insurer’s trust funds,” begins as follows:
“Every effort shall be made by the group self-insurer, its trustees, its group administrator or other agent(s) to preserve the integrity, strength and liquidity of the group’s fund[s] so as to permit the timely and complete payment of all group claims and other liabilities. With the exception of groups consisting of municipal corporations, unless otherwise authorized by the chair, group self-insurers shall be subject to the following requirements with respect to trust funds.”
The remainder of the regulation consists of five subdivisions that impose specific restrictions on the use, commingling, investment and distribution of funds held in trust by a GSIT (12 NYCRR 317.8 [a]-[e]).
Read as a whole, it is apparent that 12 NYCRR 317.8 is directed at protecting the funds held in trust by a GSIT, and the regulation is not the source of a legal duty imposed upon UHY or alleged “other agent(s)” to maintain the fiscal solvency of the trusts. The second sentence of the regulation requires a GSIT to comply with specific restrictions established in subdivisions (a) through (e) on the use, commingling, investment and distribution of trust funds. There is nothing in 12 NYCRR *690 317.8 that speaks to assessments or other means by which a GSIT may raise sufficient revenues to maintain fiscal solvency, the expenditure of trust funds for trust purposes, or the manner in which a GSIT prepares its financial statements and accounts for future claims liabilities.
Against this backdrop, the term “the group’s fund[s],” as used in the first sentence of the regulation, can only be understood as referring to the funds held by a GSIT in trust for its members, a reading that fully comports with the purpose expressed in the title of the regulation: ensuring the “[i]ntegrity of . . . trust funds.” Moreover, unlike the second sentence of the regulation, which is cast in mandatory terms and expresses clearly delineated limits on the use, borrowing, commingling, investment and distribution of trust funds,[1] the first sentence merely imposes a “best efforts” requirement directed broadly at preserving the “integrity, strength and liquidity” of the funds held by a GSIT, so as to permit the timely and complete payment of liabilities.
Accordingly, even assuming that an outside auditor can be deemed to be an “other agent” of a GSIT, and not merely a provider of “outside [accounting] services” coordinated by the group administrator (see 12 NYCRR 317.2 [g]), the court concludes that 12 NYCRR 317.8 does not give rise to an independent duty on the part of UHY to maintain the fiscal solvency of the trusts and is not the source of a duty in common with the WCB that would support the proposed claim for implied indemnification.
Nor is there anything else in the part 317 regulations cited by the WCB that would give rise to such a duty on the part of a GSIT’s outside auditor. Under 12 NYCRR 317.19, a GSIT must annually file “audited financial statements prepared in accordance with GAAP, . . . certified by an independent certified public accountant” (12 NYCRR 317.19 [a] [2]). But this regulation squarely was before the Court in Madden, and similar allegations concerning certified financial statements submitted to the WCB pursuant to 12 NYCRR 317.19 were held insufficient to support a claim of implied indemnity *691 against a public accounting firm. Further, insofar as the regulation could be read to create a legal duty on the part of the outside accountant, the duty is not one to maintain the fiscal solvency of the GSIT and, in any event, would be a duty owed directly to the trusts or the WCB. As a result, a claim of implied indemnity would not lie (see Madden; see also Peoples’ Democratic Republic of Yemen v Goodpasture, Inc., 782 F2d 346, 350 [2d Cir 1986]).
Finally, the WCB argues that the trusts’ governing documents and/or the service agreements between the trusts and their group administrator represent a source of common duties giving rise to a claim of implied indemnity. The court disagrees. Even assuming that these agreements imposed legal duties on UHY, a nonparty thereto, the claimed breaches are, in essence and reality, direct claims premised upon allegations that UHY rendered flawed auditing services to the trusts.
C. Assignee of HITNY Member Claims
The WCB sues as assignee of the claims of former employer-members of the HITNY trust in the HITNY member action. In Murray Bresky Consultants, Ltd v New York Compensation Manager’s Inc. (106 AD3d 1255 [2013]), the Third Department held that GSIT trustees owe a duty in common with the employer-members of a GSIT “to maintain adequate reserves in the trust so that [the GSIT] was adequately funded and its assets would cover its liabilities” (id. at 1259). For this reason, the WCB’s proposed common-law indemnity claim against the HITNY trustees cannot be said to be patently lacking in merit.
The proposed pleading does not, however, include legally sufficient allegations of a duty in common between the employer-members of the trust and the trust’s outside auditor that would support an implied indemnity claim against UHY. For substantially the reasons stated above, this claim lacks any merit.
Conclusion
Accordingly,[2] it is ordered that the motion to amend the complaint in CRM is granted; and it is further ordered that the motion to amend the complaint in UHY is granted to the limited extent that plaintiff may update the factual allegations pertaining to the trusts’ deficits, but denied in all other respects; and it is further ordered that the motion to amend *692 the complaint in HITNY member action is granted as to the allegations pertaining to the HITNY trustees and denied as to the allegations pertaining to UHY; and it is further ordered that counsel to the WCB and UHY shall confer regarding the status of UHYs filed (but not fully submitted) motion to amend the answer in UHY and report back to the court within 30 days of the date of this coordinated decision and order.

. There is no claim that UHY violated the regulation’s restrictions on the borrowing, commingling and investment of trust funds or the distribution of dividends or excess earnings. Rather, the gravamen of the proposed claim is that UHY’s actions and omissions had the effect of misstating the trusts’ financial condition, particularly with respect to their ability to pay future claims.

. The court has considered the parties’ remaining arguments and contentions, but finds them unavailing.