New York State Workers' Compensation Board, in its capacity as the governmental entity charged with administration of the Workers' Compensation Law and attendant regulations, and in its capacity as the successor in interest to THE HEALTHCARE INDUSTRY TRUST OF NEW YORK, THE WHOLESALE AND RETAIL WORKERS' COMPENSATION TRUST OF NEW YORK, TRANSPORTATION INDUSTRY WORKERS' COMPENSATION TRUST, TRADE INDUSTRY WORKERS' COMPENSATION TRUST FOR MANUFACTURERS, THE REAL ESTATE MANAGEMENT TRUST OF NEW YORK, THE PUBLIC ENTITY TRUST OF NEW YORK, THE NEW YORK STATE CEMETERIES TRUST, and ELITE CONTRACTORS TRUST OF NEW YORK, Plaintiff,

against
Compensation Risk Managers, LLC et al., Defendants.


10288-09

Rupp Baase Pfalzgraf Cunningham LLC
Attorneys for the Workers' Compensation Board
(Daniel E. Sarzynski, Matthew C. Lenahan and 
Anne K. Bowling, of counsel)
1600 Liberty Building
Buffalo, New York 14202
John H. Snyder, PLLC
Attorneys for Patrick Borek, Kathleen Collins, Joseph Creador, Donald Larder, Karen Pfeifer, Robert Schuck, David Smeltzer, Michael Sweeney, Louis Viteritti and Linda Walleshauser
(John H. Snyder and Thomas C. Sima, of counsel)
555 Fifth Avenue, Suite 1700
New York, New York 10017


Richard M. Platkin, J.

This is an action brought by the New York State Workers' Compensation Board ("WCB" or "Board") in its capacity as the governmental entity charged with administration of the Workers' Compensation Law ("WCL") and as the successor to eight group self-insured trusts ("GSITs") administered by Compensation Risk Managers, LLC ("CRM"): the Healthcare Industry Trust of New York ("HITNY" or "Trust"); the Wholesale and Retail Workers' Compensation Trust of New York; the Transportation Industry Workers' Compensation Trust; the Trade Industry Workers' Compensation Trust for Manufacturers; the Real Estate Management Trust of New York; the Public Entity Trust of New York; the New York State Cemeteries Trust; and the Elite Contractors Trust of New York (collectively "the Trusts"). 
Defendants Patrick Borek, Kathleen Collins, Joseph Creador, Donald Larder, Karen Pfeifer, Robert Schuck, David Smeltzer, Michael Sweeney, Louis Viteritti and Linda Walleshauser, each of whom is alleged to have served as a HITNY trustee ("Trustee"), move pursuant to CPLR 3211 (a) (1), (3), (5) and (7) and CPLR 3016 (b) for dismissal of the Board's sixth and seventh causes of action, alleging breach of contract and common-law indemnification, respectively. The Board opposes the motion and cross-moves to consolidate this action with other related cases.
BACKGROUND
The HITNY Trust is a GSIT formed pursuant to the WCL and attendant regulations. The Trust's members were employers within the healthcare industry that conducted business in New York State and were required to provide workers' compensation insurance to their employees.
HITNY was formed when defendant David Smeltzer, a senior executive with a healthcare employer, executed a trust agreement with Key Bank of New York on September 12, 1999. The trust agreement included joinder and indemnification provisions that were assented to by Smeltzer and a representative of CRM. The Trust then entered in a separate service agreement, also signed by Smeltzer, by which CRM was engaged to serve as the Trust's group administrator. The Board approved HITNY's application to operate as a GSIT effective December 1, 1999.
At various times, the Board found the Trust to be underfunded and requested the implementation of remedial measures. For example, the Board and the Trustees entered into several consent decrees, pursuant to which the Trustees agreed, among other things, to temporarily close the Trust to new members, eliminate and/or reduce discount rates, and levy assessments on members.
The Board alleges that in the earlier years of the Trust's existence, the financial statements presented to it showed a small but manageable deficit. Beginning in 2006, however, the financial statements began to disclose far more serious problems. For the fiscal year ending on September 30, 2005, the Trust's audited financial statements showed a deficit of almost $6 million, a three-fold increase from the prior year. By September 30, 2006, this deficit had ballooned to more than $75 million.
On or about December 31, 2007, the Board assumed administration of the Trust after finding it to be insolvent and unable to properly administer outstanding liabilities (see 12 NYCRR 317.20). As such, the WCB is the successor to the Trust. 
After assuming administration, the WCB issued letters to Trust members advising them of their joint and several liability for the Trust's deficit, estimated to be about $90 million at that point, and the prospect of collection actions against members who failed to pay their share. 
The Board also commissioned a forensic analysis of the Trust by the public accounting firm of Bollam, Sheedy, Torani & Co., LLP ("BST"). In a report dated November 24, 2009, BST found that the Trust's accumulated deficit was in excess of $220 million as of September 30, 2006. After receiving BST's report, the Board issued letters to the former Trust members advising of their joint and several liability for the deficit.
On or about December 30, 2013, the WCB purchased an assumption of liability ("ALP") policy for the Trust at a cost of $82.7 million, which served to transfer financial risk to the ALP carrier. The Board alleges that, despite its efforts to reduce the Trust's deficit, more than $20 million in unfunded liabilities remain.
This action was commenced on December 9, 2009. The original defendants were CRM, alleged affiliates of CRM and other related entities ("CRM Entities"), and certain individuals alleged to have been owners, officers and/or employees of CRM ("CRM Individuals"). The WCB filed an amended complaint on March 26, 2010, a second amended complaint on November 6, 2013, and a third amended complaint on September 9, 2016 (see Decision & Order dated October 1, 2013; Coordinated Decision & Order dated February 11, 2016). As is pertinent here, the second amended complaint joined the Trustees as defendants, and the third amended complaint ("Complaint") added a cause of action against them for implied indemnity.
The claims against the Trustees rest principally on their alleged failure to exercise sufficient oversight over CRM with respect to matters such as the admittance of new members, compliance with underwriting guidelines, the provision of risk management services, the setting of claims reserves, the procurement of insurance for the Trust and its officers and directors, the investigation of workers' compensation claims, and the timely administration of such claims (¶¶ 479-490). The Complaint further cites the Trustees' alleged failures to, among other things: provide the members with documentation that accurately disclosed the Trust's financial condition; hold annual membership meetings; appoint new members to the board of trustees (rather than allowing CRM to do so); and take steps to remedy the Trust's deficit and restore the Trust to solvency (¶¶ 493-502). In sum, the WCB alleges that, "for all practical purposes, the HITNY Trustees left HITNY without a functioning Board of Trustees" (id. ¶ 503).
ANALYSIS
Dismissal under CPLR 3211 (a) (1) is warranted "if documentary evidence conclusively establishes a defense as a matter of law" (Haire v Bonelli, 57 AD3d 1354, 1356 [3d Dept 2008]; see Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 [2002]; Angelino v Michael Freedus, D.D.S., P.C., 69 AD3d 1203, 1205 [3d Dept 2010]). On such a motion, "affidavits submitted by a defendant do not constitute documentary evidence upon which a proponent of dismissal can rely" (Crepin v Fogarty, 59 AD3d 837, 838 [3d Dept 2009]).
On a motion to dismiss made pursuant to CPLR 3211 (a) (7), "the [C]ourt must afford the pleadings a liberal construction, take the allegations of the complaint as true and provide plaintiff the benefit of every possible inference" (EBC 1, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). The Court's "sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail" (Polonetsky v Better Homes Depot, Inc., 97 NY2d 46, 54 [2001] [internal quotation marks and citation omitted]). However, the Court need not "accept as true legal conclusions or factual allegations that are either inherently [*2]incredible or flatly contradicted by documentary evidence" (1455 Washington Ave. Assoc. v Rose & Kiernan, 260 AD2d 770, 771 [3d Dept 1999] [internal quotation marks and citations omitted]).
Dismissal is warranted under CPLR 3211 (a) (5) where the movant establishes that a cause of action may not be maintained due to the expiration of the statute of limitations. The movant bears the initial burden of "support[ing] the motion with an affidavit or other competent proof sufficient, if uncontroverted, to establish the [statute of limitations] defense as a matter of law" (State Higher Educ. Services Corp. v Starr, 158 AD2d 771, 771 [3d Dept 1990]; see Romanelli v Disilvio, 76 AD3d 553, 554 [2d Dept 2010]). Upon such a showing, "the burden shifts to the party opposing the motion to aver evidentiary facts" sufficient to defeat the statute of limitations defense, or at least raise factual questions concerning the defense (Hoosac Val. Farmers Exch. v AG Assets, 168 AD2d 822, 823 [3d Dept 1990]; see Doyon v Bascom, 38 AD2d 645, 645-646 [3d Dept 1971]).
A. Void Ab Initio
The Trustees allege that documentary evidence establishes that the Trust is void ab initio for at least two reasons. First, the Trustees contend that the creation of the Trust was induced by fraud, alleging that CRM and its agents deceived David Smeltzer as to the nature of the documents that he was signing to form the Trust. Second, the Trustees argue that the documents by which the Trust was formed, including the trust agreement, are void because CRM was not a licensed GSIT administrator at the time. On the basis of these allegations, the Trustees argue that the claims against them must be dismissed inasmuch as they are predicated on the existence of a valid and enforceable agreement between the Trust and the Trustees.
With respect to the claim of fraud, the Trustees rely upon the 72-page affidavit of David Smeltzer, sworn to on March 18, 2016, and the voluminous exhibits annexed thereto. Smeltzer avers, among other things, that when he executed the Trust formation documents, he was led to believe that he "was merely purchasing insurance [for his employer], and not, in effect, starting an insurance company" (¶ 16). Smeltzer maintains that the insurance broker, Vanner Insurance Agency, falsely represented to him, through his employer, "that said documents were merely for the routine purpose of purchasing workers['] compensation insurance for [his employer]" (id. ¶ 15). He further avers that certain of the Trust documents he executed were notarized by Daniel Hickey, but claims that Hickey "did not witness" the execution of the documents (id. ¶ 17). 
Smeltzer's assertion that he was involved in the formation of the Trust without realizing it is memorialized in the minutes of the first meeting of the HITNY trustees, held on November 21, 2002. The Trustees further allege that a representative of the Board was present at the meeting and, therefore, knew of the Trust's fraudulent formation.
The Trustees also maintain that the Board is legally barred from contradicting Smeltzer's affidavit or denying his allegations of fraud. They cite allegations included in the amended complaint dated March 26, 2010, in which the Board accuses CRM of fraud in connection with the formation of the Trust and alleges, upon information and belief, that certain initial trustees "were neither aware they were forming a GSIT, nor that they were signing anything other than ordinary workers' compensation insurance paperwork" (¶¶ 678-679). According to the Trustees, these allegations constitute "binding informal judicial admissions."
With respect to licensure, the Trustees assert that CRM was not licensed to act as a GSIT [*3]administrator until August 2001, nearly two years after the formation of HITNY. Citing authorities recognizing that the purpose of licensure is "to protect the public from inept, inexperienced, or dishonest persons who might perpetrate or aid in the perpetration of fraud" (Kavian v Vernah Homes Co., 19 AD3d 649, 650 [2d Dept 2005]), the Trustees argue that the Trust "was illegally formed by CRM and illegally approved by WCB," thereby rendering the resulting trust documents void as against public policy.
In considering these contentions, the Court's starting point is Matter of Cruz v New Millennium Constr. & Restoration Corp. (17 AD3d 19 [3d Dept 2005]), in which the Appellate Division, Third Department held that the broad language of WCL § 54 (5), governing the cancellation and termination of workers' compensation insurance contracts, precludes "voiding a contract for fraud[,] thereby making it impossible to have ab initio rescission" (id. at 22-23 [internal citation omitted]). Separate and apart from the specific dictates of the WCL, the Third Department found "it difficult to reconcile the existence of a right to rescind a workers' compensation policy ab initio with the public policy considerations underlying the compulsory workers' compensation statutory scheme, namely, to surely and swiftly compensate an injured employee or a dependent of a deceased employee" (id. at 23 [internal citation omitted]). In particular, the Appellate Division highlighted the "serious potential adverse effects of retroactive cancellation on employees . . . , even when such termination is based on fraud perpetrated by the employer" (id.).
While the Trustees' arguments here do not implicate the same statutory provisions that were before the Third Department in Cruz, similar considerations compel the conclusion that a GSIT, such as the Trust, cannot be deemed void ab initio. Retroactive cancellation of HITNY arguably would mean that the Trust never existed, thereby precluding continued insurance coverage for workers who were injured while employed by the members of the Trust. Moreover, the regulations governing GSITs do include notice of termination requirements analogous to those involved in Cruz. Under the circumstances, the Court does not believe that the retroactive voiding of the Trust or the trust formation documents is a proper remedy for any proven fraud in the formation of the Trust.
In any event, the Trustees' proof of fraud in the formation of the Trust does not "utterly refute[]" the allegations of the Complaint and entitle the Trustees to dismissal of the claims alleged against them (Goshen, 98 NY2d at 326). In maintaining that the Trust and the trust documents are the product of fraud, the Trustees rely principally upon the affidavit of Smeltzer. But affidavits are not documentary evidence upon which a proponent of dismissal under CPLR 3211 (a) (1) may rely (see Lopes v Bain, 82 AD3d 1553, 1554 [3d Dept 2011]; Crepin 59 AD3d at 838). "Materials that clearly qualify as documentary evidence include documents reflecting out-of-court transactions such as mortgages, deeds, contracts, and any other papers, the contents of which are essentially undeniable" (Midorimatsu, Inc. v Hui Fat Co., 99 AD3d 680, 682 [2d Dept 2012] [internal quotation marks and citations omitted], lv dismissed 22 NY3d 1036 [2013]). The contents of an affidavit, in contrast, are always subject to question.
Nor does the Court believe that the alleged informal judicial admissions cited by the Trustees compel a finding of fraud as a matter of law. An informal judicial admission is not conclusive; it is merely some evidence of the fact allegedly admitted (see People v Brown, 98 NY2d 226, 232 n 2 [2002]). This seems particularly true where the alleged admission was made [*4]solely upon information and belief.
In any event, even if the Smeltzer affidavit were treated as documentary evidence, it does not conclusively establish the elements of fraud. In particular, a claim of fraud requires a showing of actual and justifiable reliance on the alleged misrepresentations or omissions (Lama Holding Co. v Smith Barney, 88 NY2d 413, 421 [1996]; see Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 178 [2011]). Here, any claim of justifiable reliance must address Smeltzer's concession that he did not read the Trust formation documents that he signed. Moreover, insofar as Smeltzer and other Trustees continued to serve as such and carry out the business of the Trust with full knowledge of the allegedly fraudulent formation of the Trust, the present record does not foreclose a finding of ratification.[FN1]

The Trustees' alternative contention, that the Trust is void from its inception because CRM was not licensed, merits little discussion. The Trustees have failed to establish any basis in law or logic for deeming the Trust to be void ab initio because CRM was not properly licensed for a period of about two years. Further, the Court does not believe that the Board's claims against the Trustees constitute efforts to enforce a contract made in violation of the licensure laws, and, in any event, the public policy considerations emphasized in Cruz weigh heavily against the remedy requested by the Trustees. Finally, the Court observes that, in prohibiting unlicensed persons and entities from representing GSITs before the Board, the State Legislature already has established a remedy: criminal and civil penalties against those who violate the statutory prohibition (see WCL § 50 [3-b]). 
For all of the foregoing reasons, the Court rejects the claim of the Trustees that HITNY is void ab initio.
B. Breach of Contract
The Trustees argue that the sixth cause of action fails to allege a legally sufficient claim for breach of contract, and, in any event, the claim is barred in whole or in part by the expiration of the statute of limitations.
1. Sufficiency of the Pleading
The Trustees challenge the sufficiency of the contractual claim, contending that it fails to identify the specific agreement that allegedly was breached, how such agreement was breached, which Trustees were involved in the breach, and when the breaches occurred. According to the Trustees, the Complaint merely "alleges in conclusory terms that the Trustees breached the Trust Agreement in some unexplained time and fashion."
The Court does not find the Trustees' argument availing. The Complaint pleads the existence of an enforceable contract between the Trust and the Trustees (the trust agreement), the Trustees' breaches of the agreement and the Trust's performance of its obligations thereunder (see Clearmont Prop., LLC v Eisner, 58 AD3d 1052, 1055 [3d Dept 2009]). Further, the Complaint sufficiently delineates the Trustees' alleged breaches of the Trust Agreement, which, viewed in a light most favorable to plaintiff, are alleged to have continued throughout the Trustees' service up until December 31, 2007, when the Board assumed administration of the Trust. And the Trustees [*5]have not conclusively demonstrated that the alleged breaches fall outside the scope of their contractual obligations to the Trust or the duty of good faith and fair dealing implicit therein. 
Accordingly, on the present record, the Trustees have failed to establish their entitlement to dismissal of the sixth cause of action under CPLR 3211 (a) (7) (see New York State Workers' Compensation Bd. v Consolidated Risk Servs., Inc., 125 AD3d 1250, 1257-1258 [3d Dept 2015]).
2. Timeliness
The Trustees further contend that the claim for breach of contract must be dismissed because the Complaint fails to allege any breaches of contract that occurred within the relevant limitations period.
The statute of limitations for the breach-of-contract claim is six years (CPLR 213 [2]), and the claim "accrues at the time of the breach," even where damages from the breach are not sustained until later and the "injured party [is] ignorant of the existence of the wrong or injury" (Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 402-403 [1993] [internal quotation marks omitted]; see CPLR 203 [a]). Where, as here, "a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring up to six years prior to filing of the suit" (Airco Alloys Div. v Niagara Mohawk Power Corp., 76 AD2d 68, 80 [4th Dept 1980]). However, "so much of the causes of action asserted by [plaintiff] as accrued more than six years prior to the commencement of the instant action must be dismissed as time-barred" (Westchester County Correction Officers Benevolent Assn., Inc. v County of Westchester, 65 AD3d 1226, 1228 [2d Dept 2009]).
The contractual claim was deemed interposed against the Trustees on March 14, 2013, when the WCB filed its motion seeking leave to join the Trustees as defendants. Thus, under the applicable six-year limitations period, the WCB may pursue claimed breaches of contract on and after March 14, 2007. And while the Trustees contend that they were active and engaged in their duties during the statutory period, relying primarily on the Smeltzer affidavit, they have failed to conclusively demonstrate that none of the claimed breaches of contract occurred during such period.
In determining that the contractual claim is time-barred as to alleged breaches prior to March 14, 2007, the Court rejects the WCB's attempt to invoke the relation-back doctrine. Specifically, the Board argues that the claims against the Trustees made herein relate back to July 10, 2009, when certain former employer-members of the Trust commenced suit against the entities and individuals allegedly responsible for the Trust's accumulated deficit, including the Trustees (Index No. 5966-09 ["Member Action"]).
Pursuant to CPLR 203 (f), a "claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." "The sine qua non of the relation[] back doctrine is notice, and the requisite notice must be contained in the [pleading to which relation back is sought]" (Lawyers' Fund for Client Protection of the State of NY v JP Morgan Chase Bank, N.A., 80 AD3d 1129, 1130 [3d Dept 2011]; see US Bank N.A. v Gestetner, [*6]103 AD3d 962, 965-966 [3d Dept 2013]; August Bohl Contr. Co., Inc. v L.A. Swyer Co., Inc., 74 AD3d 1649, 1650-1651 [3d Dept 2010]).
The relation-back doctrine also "allows a claim asserted against a defendant in an amended filing to relate back to claims previously asserted against a codefendant for Statute of Limitations purposes where the two defendants are 'united in interest'" (Buran v Coupal, 87 NY2d 173, 177 [1995], quoting CPLR 203 [b]). Relation back is available under this doctrine where
(1) both claims [arise] out of same conduct, transaction or occurrence, (2) the new party is united in interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he [or she] will not be prejudiced in maintaining his [or her] defense on the merits and (3) the new party knew or should have known that, but for [a] . . . mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him [or her] as well
(id. at 178 [internal quotation marks and citation omitted]; see Mongardi v BJ's Wholesale Club, Inc., 45 AD3d 1149, 1150 [3d Dept 2007]).
The Court concludes that neither form of relation-back is applicable here. Prior to the filing of the Board's motion seeking leave to serve a second amended complaint, there was nothing in the pleadings in this action that gave the Trustees the requisite notice that but-for an excusable mistake by the Board, this action would have been brought against them as well (see Buran, 87 NY2d at 181; Windy Ridge Farm v Assessor of Town of Shandaken, 45 AD3d 1099, 1099-1100 [3d Dept 2007], affd 11 NY3d 725 [2008]). In fact, the Board's failure to join the Trustees as defendants at an earlier date cannot be deemed a "mistake," inasmuch as "the WCB knew or should have known of the identity of the HITNY Trustees and their relationship to this action" when this suit was commenced in 2009 (Decision & Order dated October 1, 2013 [41 Misc 3d 1206(A), 2013 NY Slip Op 51599(U), *3]).
And even if it is possible in rare cases to apply the relation-back doctrine in the context of separate lawsuits filed against the same defendants, the Court believes that it would constitute an abuse of discretion to allow the Board to obtain the benefit of a 2009 commencement date where it took no action to sue the Trustees until 2013 (cf. DeLuca v Baybridge at Bayside Condominium I, 5 AD3d 533, 534-535 [2d Dept 2004] ["plaintiff's failure to comply with the technical requirements for commencement of an action" constituted a "mistake" for purposes of relation back]). Further counseling against this form of relation back is the Board's concession that the Member Action plaintiffs lacked standing to prosecute derivative claims against the Trustees following the commencement of this action and through the date on which the Trustees were joined as defendants herein (see Decision & Order dated December 14, 2017, Index No. 5966-09 [decided herewith] ["Member Action Decision"]).
Finally, five of the Trustees — Patrick Borek, Joseph Creador, Donald Larder, Karen Pfeifer and Linda Walleshauser — seek dismissal of the contractual claim through the submission of affidavits confirming that their involvement with the Trust ended prior to March 14, 2007. As [*7]the Board does not dispute the dates of service,[FN2]
the sixth cause of action must be dismissed as against them.
C. Implied Indemnity
The Trustees seek dismissal of the seventh cause of action for implied indemnity. While recognizing that the Appellate Division, Third Department has sustained common-law indemnity claims brought by the Board in its governmental capacity against GSIT trustees, the Trustees argue that these cases are distinguishable in two material respects: (1) the trust documents here do not explicitly or implicitly oblige the Trustees "to guarantee the solvency of the Trust;" and (2) the Board's active negligence precludes the assertion of a claim for implied indemnity.
"Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other" (Mas v Two Bridges Assoc., 75 NY2d 680, 690 [1990]). "The underpinning of indemnity actions is the prevention of unjust enrichment. In cases where such unfairness would arise from the assumption by a third party of another's debt or obligation, a contract to reimburse or indemnify is implied by law" (State of New York v Stewart's Ice Cream Co., 64 NY2d 83, 88 [1984] [internal quotation marks and citation omitted]). In such a case,
the key element . . . is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor. The duty that forms the basis for the liability arises from the principle that every one is responsible for the consequences of his [or her] own negligence, and if another person has been compelled to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him [or her](Raquet v Braun, 90 NY2d 177, 183 [1997] [internal quotation marks, alterations and citations omitted]). Thus, to state a claim for implied indemnity, the cause of action must include allegations that the Board and the Trustees owed a common duty to some other party that ought to be discharged by the Trustees.
The Appellate Division, Third Department has held that the Board, acting in its governmental capacity, "by virtue of the [WCL] and its enabling regulations, and [the administrators of a GSIT], by virtue of their agreements with the trust, owed a common duty to the covered employer members to ensure that the trust maintained adequate reserves to cover employee claims" (State of NY Workers' Compensation Bd. v Wang, 147 AD3d 104, 117 [3d Dept 2017] [internal citations omitted]; see State of NY Workers' Compensation Bd. v Madden, 119 AD3d 1022, 1025 [3d Dept 2014]; New York State Workers' Compensation Bd. v Compensation Risk Mgrs., LLC, 51 Misc 3d 683, 688 [Sup Ct, Albany County 2016]).
In light of the foregoing precedent, the Court must conclude that the claim against the Trustees for implied indemnity sufficiently states a cause of action. The issue of common duty is not, as the Trustees contend, whether the Trustees agreed to personally guarantee the solvency of the Trust. Rather, as framed by the binding authority of the Third Department, the issue is whether the Trustees "owed a common duty to the covered employees to ensure that the Trust maintained adequate reserves such that its assets would cover its liabilities" (Madden, 119 AD3d at 1025). The Third Department found in Madden that the Board had alleged such a duty "by [*8]virtue of the trust agreement, amendments and bylaws," despite the absence of any obligation of the part of the Madden trustees to personally guarantee the solvency of their GSIT under the trust agreement (id.).
Nor does the Court see merit in the Trustees' contentions regarding the Board's alleged active negligence. As previously discussed, the Smeltzer affidavit is not documentary evidence and, in any event, the sole issue before the Court at this juncture is whether the Board has stated a claim, not whether the Board ultimately can prove its allegations or whether the Trustees possess any defenses to the Board's claim.
Finally, the Court concludes that the exculpatory clause in the trust agreement has not been shown to absolve the Trustees of liability as a matter of law. While the trust agreement provides that Trustees shall not be liable if they acted "with the requisite care, skill, prudence, and diligence . . . that a prudent person . . . would use," the Complaint alleges what is tantamount to an abdication of duties: "[F]or all practical purposes, the HITNY Trustees left HITNY without a functioning Board of Trustees" (¶ 503).
CONCLUSION
Accordingly,[FN3]
it is
ORDERED that the Trustees' motion is granted to the limited extent of dismissing the sixth cause of action, alleging breach of contract, as against Patrick Borek, Joseph Creador, Donald Larder, Karen Pfeifer and Linda Walleshauser, and the motion is denied in all other respects in accordance with the foregoing.
This constitutes the Decision and Order of the Court. The original Decision and Order is being transmitted to plaintiff's counsel for filing and service; all other papers are being sent to the Albany County Clerk. The signing of this Decision and Order shall not constitute entry or filing under CPLR 2220, and counsel is not relieved from the applicable provisions of that section respecting filing, entry and Notice of Entry.
Dated: December 14, 2017
Albany, New York
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
Notice of Motion, dated December 1, 2016;
Memorandum of Law in Support of the HITNY Trustees' Motion to Dismiss, dated December 1, 2016;
Memorandum of Law in Opposition to the HITNY Trustees' Motion to Dismiss, dated February 23, 2017;
Notice of Cross-Motion, dated February 24, 2017;
Reply Affirmation of John H. Snyder, Esq., dated April 10, 2017, with attached exhibits 116-120;
Supplemental Affirmation of John H. Snyder, dated December 9, 2016, with attached replacement Exhibits 107-111;
HITNY Trustees' Omnibus Reply, dated April 10, 2017;
Affidavit of David Smeltzer, Esq., sworn to March 18, 2016, with attached exhibits 1-94;
Affirmation of John H. Snyder, Esq., dated December 1, 2016; with attached exhibits 95-115;
Affirmation of Daniel E. Sarzynski, Esq., dated October 19, 2017, with attached exhibit A;
Affirmation of Daniel E. Sarzynski, Esq., dated February 23, 2017; with attached exhibits A-C and Q;
Affidavit of Michael Papa, Esq., sworn to February 23, 2017, with attached exhibits D-P; and
Transcript of Oral Argument, held on July 21, 2017.



Footnotes

Footnote 1:In fact, the minutes of the November 21, 2002 meeting of the board of trustees show the Trustees undertaking their responsibilities to the Trust with knowledge of Smeltzer's claim that he was involved in the formation of the Trust without realizing it.

Footnote 2:The Board originally took issue with the affidavit submitted by Donald Larder because it was unsupported by documentary evidence, but withdrew that objection at oral argument.

Footnote 3:The Court has considered the parties' remaining arguments, contentions and requests for relief, but finds them to be without merit or unnecessary to reach in view of the disposition ordered herein. Further, the Board's cross motion for consolidation is denied for the reasons stated in the Member Action Decision.