Pendleton v Mackesy (2024 NY Slip Op 51150(U))

[*1]

Pendleton v Mackesy

2024 NY Slip Op 51150(U)

Decided on September 4, 2024

Supreme Court, Westchester County

Ondrovic, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 4, 2024
Supreme Court, Westchester County

Brent Pendleton and DINA PENDLETON, Plaintiffs,

against
Scott Mackesy and JENNIFER MACKESY, Defendants.
SCOTT MACKESY and JENNIFER MACKESY, Third-Party Plaintiffs,
against
ICE HOUSE CONSTRUCTION, INC., ANTONIO V CAPICOTTO PE, DANIEL FRISCH ARCHITECT, PC, VERITAS ENGINEERING AND INSPECTION PLLC, and EDWARD C. LANGE, INC., Third-Party Defendants.

Index No. 55963/2022

Shapiro Gettinger Waldinger & Monteleone LLP Attorneys for Plaintiff 
Quinn McCabe LLP Attorneys for Third-Party Defendant DANIEL FRISCH ARCHITECT 
Max Difabio, Esq. Attorney for Third-Party Defendant EDWARD C. LANGE 
Welby, Brady & Greenblatt, LLP Attorneys for Third-Party Defendant ANTONIO V. CAPICOTTO, PE 
Milber Makris Plousadis & Seiden, LLP Attorneys for Third-Party Defendant VERITAS ENGINEERING AND INSPECTION PLLC 
Wilson Elser Moskowitz Edelman & Dicker LLP Attorneys for Third-Party Defendant ICE HOUSE CONSTRUCTION INC.

Robert S. Ondrovic, J.

In a property damage action, third-party defendant Daniel Frisch Architects, PC (DFA) moves for an Order pursuant to CPLR 3212 dismissing the third-party complaint and crossclaims asserted against DFA (Motion Seq. 4), defendants/third-party plaintiffs Scott and Jennifer Mackesy (the Mackesys) move for an Order pursuant to CPLR 3212 dismissing the complaint (Motion Seq. 5), and third-party defendant Antonio V. Capicotto, PE (Capicotto) moves for an Order pursuant to CPLR 3212 dismissing the third-party complaint and crossclaims asserted against Capicotto (Motion Seq. 6).
Papers Considered
Motion Seq. 4 NYSCEF Doc. Nos. 129-168, 237-244, 281-284
1. Notice of Motion/Affirmation of Eric A. Thorsen, Esq./Exhibits A-Y/Affidavit of Daniel Frisch, RA, AIA/Exhibits A-B/Affidavit of Stephanie Nussbaum, AIA, RA/Exhibits A-C/Affidavit of Michael So, P.E./Exhibits A-C/Statement of Undisputed Facts/Memorandum of Law
2. Response to Statement of Material Facts/Affirmation of Steven M. Bundschuh, Esq. in Opposition/Exhibits 1-6
3. Affirmation of Joseph D. Brees, Esq (in reply)/Exhibit A/Affidavit of Michael So, P.E. (in reply)/Reply Memorandum of Law
Motion Seq. 5 NYSCEF Doc. Nos. 169-208, 254-277, 285
1. Notice of Motion/Statement of Material Facts/Affidavit of Yoandi Interian, P.E., CFEI (including Exhibits A-B)/Affirmation of Steven M. Bundschuh, Esq./Exhibits A-II/Memorandum of Law
2. Memorandum of Law in Opposition/Affirmation of Brent Pendleton in Opposition/Exhibits A-J/Affidavit of Mark A. Lukasik, P.E./Exhibits A-D/Affirmation of Heather R. Gushue, Esq. in Opposition/Exhibits 1-5/Response to Statement of Material Facts
3. Memorandum of Law in Reply
Motion Seq. 6 NYSCEF Doc. Nos. 210-217, 246-252
1. Notice of Motion/Memorandum of Law/Affirmation of Michael I. Silverstein, Esq./Exhibits A-E
2. Affirmation of Steven M. Bundschuh, Esq. in Opposition/Exhibits 1-6
Discussion
As previously noted, this action arises out of the stormwater flooding of plaintiffs' property in Bronxville (45 Oakledge Road), allegedly caused by a construction project on defendants' higher elevated, adjoining property (25 Oakledge Road), which consisted of the demolition of an existing house, physical alteration of defendants' parcel, and construction of a new house thereon. Plaintiff commenced this action by filing a summons and complaint on January 31, 2022. The complaint asserts causes of action for negligence, trespass, and private [*2]nuisance. Defendants (the Mackesys) interposed an answer and then three months later filed a third-party summons and complaint on June 6, 2022. The third-party complaint asserts causes of action for common law and contractual indemnification, contribution, and breach of contract for failing to procure general liability insurance.
After discovery, a Trial Readiness Order was entered, and plaintiff filed the Note of Issue in February 2024. Now, the Mackesys move for an Order pursuant to CPLR 3212 dismissing the complaint, and DFA and Capicotto, separately, move for an Order pursuant to CPLR 3212 dismissing the third-party complaint and crossclaims asserted against them.
Summary Judgment
The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (see Winegrad v NY Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see Winegrad, 64 NY2d at 853). 
Once the prima facie showing has been made, "the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; see Zuckerman, 49 NY2d at 562). Mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient to defeat a prima facie showing of entitlement to summary judgment (see Zuckerman, 49 NY2d at 562).
The Mackesys' Motion to Dismiss the Complaint
The Mackesys contend that the improvements to their property were made in good faith to fit the property for some rational use and water was not drained onto plaintiff's property by artificial means, such as pipes and ditches. In support, the Mackesys submit, among other things, the deposition transcripts for Scott Mackesy, Jennifer Mackesy, and Brent Pendleton, a building permit for renovations performed on the Mackesy property, and a certificate of occupancy for the home on the Mackesy property. 
The Mackesys argue that they renovated the residential property in good faith for a rational use as a family home after obtaining a building permit and certificate of occupancy. The Mackesys also argue that no artificial means "(i.e., drainpipes, man-made berms and swales, manmade channels or ditches)" were employed to divert or direct stormwater runoff onto plaintiff's property (see Mem. Law in Support at 13 [NYSCEF Doc. 208]). The Mackesys also point to Mr. Pendleton's testimony wherein he observed no drainpipes, berms or swales on the Mackesys' property diverting stormwater to plaintiffs' property (Mackesys exh. K, B. Pendelton dep. trans. at pp. 91-92 [NYSCEF Doc. 183]).
The Mackesys also submit an expert report from Yoandi Interian, P.E., wherein Interian opines that surface water runoff onto plaintiff's property was not a result of stormwater diversion from the Mackesys' property through artificial means "such as pipes, ditches, swales, berms or channels" but due to the topography of the adjoining properties, a higher elevated property abutting the Mackesys' property, and the presence of impervious rock and ledge outcroppings. Interian also opines that water intrusion in plaintiffs' home was not a result of stormwater diversion from the Mackesys' property but rather from groundwater penetration through pervious foundation walls and concrete floor slab. Interian further opines that there was no evidence that the Mackesys' drainage system was improperly installed or malfunctioning, and that the [*3]Mackesys' stormwater management systems exceeded drainage requirements established by the State of New York Building Code and the codes for the Village of Bronxville and Westchester County.
Further as to plaintiffs' negligence cause of action, the Mackesys argue that the contractors who performed work on their property were independent contractors and are therefore not liable for any negligence by those contractors, and that no exceptions apply that would otherwise create liability, namely: (1) there is no statutory duty on the Mackesys to perform or control the work; (2) the Mackesys did not assume a specific duty to perform, supervise or control the work; (3) a duty to keep the premises reasonably safe has not been imposed on residential homeowners who were not holding their premises open to the public; and (4) the improvements upon the Mackesys' property were not inherently dangerous.
In opposition, plaintiffs argue that the Mackesys' alteration of their property and construction of their house, along with insufficient stormwater management systems, constitute artificial means that diverted runoff water onto their property. Plaintiffs submit, among other things, an affidavit and three expert reports from Mark A. Lukasik, P.E., an affirmation from Mr. Pendleton, and photos and videos of stormwater runoff from the Mackesys' property onto plaintiffs' property.
In his first report dated November 10, 2021, Lukasik opined that the stormwater management plans dated April 1, 2020, did not reflect the latest architectural plans approved by the Bronxville Building Department on October 8, 2020. Among other things, the latest architectural plans included a significantly larger rear patio, but the drainage design was not updated for the additional impervious area. Also, on a site visit on August 27, 2021, Lukasik observed that the roof runoff collection system was incomplete and that grading of the yard approximated the latest architectural plans but did not follow the stormwater drainage plan.
In his second report dated January 31, 2023, Lukasik reviewed stormwater computations for the Mackesys' property filed with the Village of Bronxville (on February 26, 2020). Lukasik opined that the analysis for the planned drywell used less square footage for the dwelling and rear patio, such that, when using rain event assumptions based on modern rainfall precipitation values for the location, the planned drywell appears undersized by 999 cubic feet, or would result in 80% more runoff than the analysis states the planned drywell has available. Lukasik goes on to critique documents apparently prepared in December 2021 and January 2022 after the alleged flooding events on plaintiffs' property for, among other things, not including necessary calculations to support drainage assertions or instructions to execute drainage plans. Lukasik concludes that the "as-built" configuration appears to acknowledge oversight in the initial design to provide driveway drainage and that the engineer's new distribution of drywells places half of the roof and patio stormwater runoff mitigation over 600% closer the plaintiff's property than the plan originally approved by the Village.
In his third report dated June 4, 2024, Lukasik opined that certain assertions of the Mackesys' expert, Interian, on this matter are invalid, in part, because a lack of stormwater controls during construction, lack of a documented, coordinated stormwater mitigation design, lack of documented subsurface investigation results, lack of groundwater elevation data (for plaintiffs' property), and an absence of prior inundation history (for plaintiffs' home). Further, Lukasik opined that any statement that the Mackesys' stormwater mitigation system exceeds required codes is premature given that an analysis of the completed stormwater mitigation system, which Lukasik notes is "dramatically different" from the design originally approved by [*4]the Village, was not produced during discovery. Lukasik also disagrees with Interian's observations as to, among other things, the flow of surface water on and from the Mackesys' property. 
Lukasik also opines that:
The completed construction, through the patio drainage pipes, grading of the rear of the yard, and construction of a retaining wall extending out from 25 Oakledge toward 45 Oakledge has the cumulative impact of diverting stormwater runoff towards 45 Oakledge . . . .
The creation of the paths to divert water from the rear of 25 Oakledge to the front of 25 Oakledge results in a stream of water that enters 45 Oakledge. This runoff does not travel towards the drywells in the front of 25 Oakledge based on video observations of the velocity and quantity of water traveling in this path (Tectonic Report dated June 5, 2024 at 6 [NYSCEF Doc 270] [emphases added]).
"A landowner will not be liable for damages to an abutting property caused by the flow of surface water due to improvements to his or her land, provided that the improvements were made in good faith to fit the property for some rational use, and that the water was not drained onto the other property by artificial means, such as pipes and ditches" (Moretti v Croniser Constr. Corp., 76 AD3d 1055, 1055 [2d Dept 2010]; see Kossoff v Rathgeb-Walsh, Inc., 3 NY2d 583, 590-591 [1958]). 
"The general rule is that an owner of land is liable for injuries caused when he [or she] alters the natural surface of the land so as to collect water thereon and then discharges it upon the land of another at a place or location other than where it would naturally flow and in larger quantities than would normally exist" (Tomei v Town of Riverhead, 174 AD3d 761, 761 [2d Dept 2019] [quoting Sellnow v O'Donnell, 84 AD2d 589, 589, 444 NYS2d 484 [3d Dept 1981]]).
Here, the Mackesys' failed to demonstrate the absence of a triable issue of fact, or in the alternative, plaintiffs raised a triable issue of fact, as to the diversion of stormwater runoff onto plaintiffs' property by artificial means. Plaintiffs' lay and expert evidence, along with defendants' own evidence, provide ample support to suggest that defendants' alteration of their property may have resulted in "artificial collection, concentration and discharge of large quantities of surface water onto another's land sufficient to constitute actionable conduct" (Long v Sage Estate Homeowners Ass'n, Inc., 16 AD3d 963, 965 [3d Dept 2005]). On this score, Long is instructive. Defendants in Long constructed a berm "adjacent to an existing swale that ran downslope and perpendicular to plaintiff's property. The net effect of the berm was to divert a large volume of water, which had previously flowed over Greenhouse's property in a sheeting fashion, into the narrow swale, thereby creating a 'funnel effect'" (id.).
In addition to the expert testimony described above, evidence that a factfinder may consider in finding artificial means diverted water onto plaintiffs' property include:
• a 2017 pre-construction survey of the Mackesys' property, which provides topographic contour lines and a "stone walk" curling around the southeast corner of the then-existing house (or the rear corner near the property line between the Mackesy property and plaintiffs' property) (Mackesys exhibit EE [NYSCEF Doc. 203]);[FN1]
• a March 2022 "Final Drainage Plan" for the Mackesys' property, which provides topographic contour lines and a retaining wall running perpendicular to the Mackesy-Pendleton property line from the southeast corner of the new house (Mackesys exhibit Z [NYSCEF Doc. 198]); and
• a June 2022 post-construction survey of the Mackesys' property, which also depicts the perpendicular retaining wall (Mackesys exhibit FF [NYSCEF Doc. 204).
Comparing the contour lines of the 2017 survey and the March 2022 drainage plan, the March 2022 drainage plan appears to depict a steeper elevation change in the vicinity uphill and to the rear of a flatter area (whereon spa equipment is situated) and the newly installed perpendicular retaining wall. Notably, photographs submitted in Interian's report appear to depict the apparent steep elevation change is confined to a narrow strip of grass between the rear patio and the Mackesy-Pendleton property line. The Interian photographs also suggest that the retaining wall stunted the otherwise continual slope of the Mackesy-Pendleton property line from the rear of the properties toward the front of the properties and left the land rear of the retaining wall several feet higher than it was before the erection of the retaining wall (see Itnerian report at 36-38, 43 [images titled: 27410(10).jpg, 27410(11).JPG, 27410(12).JPG, 27410(13).JPG, 27410(24).JPG] [NYSCEF Doc. 171]).
Regarding the decision to extend an existing stone wall along the Mackesy-Pendleton property-line and to create the perpendicular retaining wall, deponent for Ice House Construction Corp. (Ice House), Johanna Silkowski, testified as follows:
A. Ultimately I think Jennifer [Mackesy] would make that decision, but I think the idea there was that they were creating  before it was a steep slope down into that area by the HVAC equipment and so I think the idea there was to kind of level out the ground and create a spot where the spa equipment could be placed. In addition, it decreased the slope of the area around the HVAC equipment.
Q. And that would have been the extension of the stonewall; is that correct?
A. Yeah. If you see where it turns and ties back into the house.
Q. Here?
A. Yes. And then the stonewall continues and ties back into the house there (Mackesys exhibit O, Silkowksi dep. trans. vol. 1 at 215:25-216:19 [NYSCEF Doc. 187]).
Moreover, plaintiffs submit Mr. Pendleton's affidavit as to, and photographic and videographic evidence of, a significant flow of water pouring over the top corner of the perpendicular retaining wall where it meets a stone retaining wall along the Mackesy-Pendleton property line after rain events on October 26, 2021, and September 29, 2023 (see Pendleton aff. at pp. 5, 7-8 [NYSCEF Doc. 255]; Pendletons' exhibit A [NYSCEF Doc. 256]).
Together, a question of fact remains as to whether the path of excess runoff water would have followed its natural course along the Mackesy-Pendleton property line but for the patio drainage pipes, grading of the rear yard, and the perpendicular retaining wall which cumulatively created a funnel effect against the "natural chute" between the two properties thus diverting runoff water onto the Pendletons' property (see Long, 16 AD3d at 965; Tomei, 174 AD3d at [*5]761).[FN2]

The Mackesys' objection to plaintiffs' reliance on case law outside the Second Department is unavailing. The Mackesys would have this court restrict its analysis of "artificial means" to only drainpipes, man-made berms and swales or man-made channels or ditches. Notwithstanding the fact that the erection of the perpendicular retaining wall may very well function as a berm, swale, or ditch when juxtaposed to a steep gradient and another retaining wall along the property line, the Second Department has approvingly cited Third Department precedent in this area (see Tomei, 174 AD3d at 761 [quoting Sellnow v O'Donnell, 84 AD2d 589, 589, 444 NYS2d 484 [3d Dept 1981]). Further yet, the Second Department has not mandated a narrow view on what constitutes artificial means (see Moretti, 76 AD3d 1055 ["artificial means, such as pipes and ditches" [emphasis added]]).
The Mackesys' independent contractor defense also does not insulate them from immunity when the contractors were instructed by the Mackesys to construct the very thing that is alleged to have caused the damages complained of and that the damage complained of "is a direct and natural result from the work required of the independent contractor" (Long, 16 AD3d at 965, n.2 [quoting Herman v City of Buffalo, 214 NY 316, 319 [1915]).
Accordingly, the Mackesys' application to dismiss the complaint is DENIED.
DFA's Motion to Dismiss the Third-Party Complaint and Crossclaims
DFA contends that: (i) it properly designed architectural plans for the Mackesys in accordance with the ordinary and reasonable standard of care for an architect pursuant to an oral agreement between DFA and the Mackesys; (ii) it did not design the site's water drainage system; (iii) it did not control or supervise the installation of the water drainage system; (iv) it did not owe the Mackesys a duty of reasonable care independent of DFA's contractual obligations; and (v) it did not have any duty to plaintiffs (and even if it had, DFA did not breach such duty).
In support, DFA submits, among other things, affidavits from Stephanie Nussbaum, AIA, RA and Michael So, P.E. Nussbaum attests that a residential property's site water drainage system is not in the purview of an architect's services and that it is customary and industry practice for architects to refer to a separate engineer's plan regarding a specific aspect of a project, which DFA did by inserting into the architectural plans references to the site drainage plan designed by Capicotto.
So attests that he reviewed pre-construction survey plans for the Mackesys' property and DFA's architectural "as-built" plans, and conducted a site visit. So references elevations observed for the rear and front of the property and concludes that the topography of the regarded lawn did not significantly change the water course from the topography prior to construction. So [*6]further attests that differences in measured elevations and those provided in the proposed site plan are de minimis and would have no impact on the storm water drainage or flow. So further concludes that the increase in impervious area decreases the impact from the flow of stormwater on the Mackesys' property because stormwater runoff from the impervious surfaces is infiltrated into the ground and does not contribute to runoff affecting plaintiffs' property.
In opposition, the Mackesys point to the November 2021 report prepared by plaintiff's expert, Lukasik, wherein he opined that if the project were completed according to the most recent plans obtained from the Village Building Department, the Mackesys' property will increase runoff toward plaintiffs' property. The Mackesys note that Lukasik claimed that "[t]he project architect changed the project engineer's drainage design and grading scheme to increase the impervious coverage and capture additional tributary area" (Bundschuh affirmation at para. 33 [NYSCEF Doc. 238]). The Mackesys also noted Lukasik's further claim that "[t]he latest architectural plans supersede the Civil Engineer's drainage plan and propose grading of the rear and side yards of 25 Oakledge Road that will, if completed, increase the tributary area to the 45 Oakledge Road yard" (id.).
"A party's right to indemnification may arise from a contract or may be implied 'based upon the law's notion of what is fair and proper as between the parties'" (Castillo v Port Auth. of NY & N.J., 159 AD3d 792, 795 [2d Dept 2018] [quoting Mas v Two Bridges Assoc., 75 NY2d 680, 690 [1990]]). "Implied, or common-law, indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other" (id. [quoting Mas, 75 NY2d at 690] [internal quotation marks and brackets omitted]). "To establish a claim for common-law indemnification, the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident" (Perri v Gilbert Johnson Enters., Ltd., 14 AD3d 681, 684-685 [2d Dept 2005]). 
Similarly, to sustain a claim for contribution, the party asserting the claim must show that DFA breached a duty of care owed to plaintiff and that "breach of this duty contributed to the alleged injuries" (Castillo, 159 AD3d at 795).
Here, DFA established prima facie entitlement to dismissal of the third-party complaint and crossclaims asserted against it by demonstrating that it was not negligent in providing its architectural services. Nussbaum opines that DFA's architectural plans were prepared in accordance with the ordinary and reasonable standard of care of an architect. Nussbaum further attested that it is customary and industry practice for architects to refer to a separate engineer's plan regarding a specific aspect of a project, including the site water drainage system.[FN3]
[*7]Nussbaum points out that DFA did this with respect to the drainage plan prepared by Capicotto (see Nussbaum exh. B, "As-Built" plans at A-102.0 [NYSCEF Doc. 161]).
In opposition, the Mackesys fail to raise a triable issue of fact. The Mackesys contentions as to DFA's negligence are speculative in the face of further submissions by DFA including (a) a further So affidavit, wherein So attests that the DFA plans explicitly identify "additional impervious area" and that such area is served by the Mackesys' drainage system; and (b) deposition testimony from the Village of Bronxville Building Inspector, Paul Taft, wherein Taft testifies that the Mackesys' residence received a certificate of occupancy establishing that the home was constructed according to the plans (see So exh. A, Taft dep. trans. at 34:03-36:10 [NYSCEF Doc. 284]). The Mackesys failed to raise issues of fact as to any negligence in DFA's architectural plans or services. As to increased stormwater runoff resulting from DFA's design, the Mackesys fail to counter DFA's showing that it was customary and industry practice for DFA to reference Capicotto's drainage plan to address such increased runoff.
As to the crossclaims, none of the third-party defendants opposed DFA's application, which further supports dismissal of the crossclaims (see Goya v Longwood Hous. Dev. Fund Co., Inc., 192 AD3d 581, 585 [1st Dept 2021]).
Accordingly, DFA's application to dismiss the third-party complaint and crossclaims asserted against it is GRANTED.
Capicotto's Motion to Dismiss the Third-Party Complaint and Crossclaims
Capicotto contends that Ice House retained Capicotto to design the site drainage system for the Mackesys' project, and that the written agreement between Capicotto and Ice House did not require Capicotto to provide contractual indemnity or procure general liability insurance. Capicotto further contends that the Mackesys are not entitled to common law indemnity because plaintiffs are seeking to hold the Mackesys liable for their own alleged wrongdoing (and not based upon the actions of Capicotto), and that contribution from Capicotto is not available to the Mackesys because Capicotto's actions were not the cause of plaintiffs' injuries.
In support, Capicotto submits, among other things, a purported agreement between Ice House and Capicotto and the deposition transcript of Building Inspector Taft, wherein Taft testified in the negative when asked whether he connected the water intrusion into plaintiffs' basement to any of the construction on the Mackesys' property.
In opposition, the Mackesys contend that the complaint alleges damages due to negligence of the Mackesys, as well as "their agents, servants and/or employees." The Mackesys submit, among other things, the November 2021 and January 2023 reports by plaintiffs' expert, Lukasik, and argue that Lukasik identified errors and shortcomings in the stormwater management design.
Notably, the Mackesys do not oppose Capicotto's application as to contractual indemnification and breach of contract regarding liability insurance. That said, these branches of Capicotto's application must be denied because the purported agreement between Ice House and Capicotto is unsigned and unaccompanied by any affidavit from someone with personal knowledge as to the agreement, and therefore holds no probative weight (see Flagstar Bank, FSB v Titus, 120 AD3d 469, 470 [2d Dept 2014]; CPLR 3212[b]; Capicotto exh. A, agreement [*8][NYSCEF Doc. 213]).[FN4]

The branches of Capicotto's application as to common law indemnification and contribution must also be denied because Capicotto failed to demonstrate the absence of a triable issue of fact as to its negligence. To be clear, the testimony of Building Inspector Taft relied upon by Capicotto is conclusory and does not utterly refute any alleged negligence in Capicotto's work (see Winegrad, 64 NY2d at 853). Alternatively, the Mackesys raised a triable issue of fact as to Capicotto's negligence resulting in plaintiffs' injuries, as claimed by plaintiffs' expert, Lukasik (see Zuckerman, 49 NY2d at 562).
Accordingly, Capicotto's application to dismiss the third-party complaint and crossclaims asserted against it is DENIED.
All other remaining contentions have been considered and are either without merit or rendered moot by the above determination.
Based on the foregoing, it is hereby
ORDERED that DFA's application (Motion Seq. 4) is GRANTED, and the third-party complaint and all crossclaims asserted against DFA are DISMISSED; and it is further
ORDERED that the Mackesys' application to dismiss the complaint (Motion Seq. 5) is DENIED; and it is further
ORDERED that Capicotto's application to dismiss the third-party complaint and all crossclaims asserted against Capicotto (Motion Seq. 6) is DENIED.
Dated: September 4, 2024
White Plains, New York
HON. ROBERT S. ONDROVIC, J.S.C.

Footnotes

Footnote 1:The Mackesys also submit a photograph in their statement of material facts depicting the pre-construction stone pathway curling around the corner of the house before the perpendicular retaining wall was constructed (see Mackesy statement of material facts at p. 25 [NYSCEF Doc. 170]).

Footnote 2:Additional questions of fact spring from (a) regrading of the rear yard; (b) increasing of impervious surfaces; (c) narrowing the pervious surface (i.e., lawn) between the rear patio and the Mackesy-Pendleton property line; and (d) the adequacy of the Mackesys' stormwater management system. Did those factors contribute to directing stormwater runoff toward the perpendicular retaining wall "in larger quantities than would normally exist" (Tomei, 174 AD3d at 761)? Did those factors result in the "artificial collection, concentration and discharge of large quantities of surface water" (Long, 16 AD3d at 965)?

Footnote 3:Nussbaum referred to the Practice Guidelines for the New York State Education Department and the State Board of Architecture:
"When elements of the project are shown on an architecture document only for information or clarification and the architect does not intend to accept responsibility for the elements, the architect shall clearly note on the documents the extent of his/her responsibility" (Nussbaum aff. at para. 10 [citing Practice Guidelines, The New York State Education Department and the State Board for Architecture, Section B(10)] [NYSCEF Doc. 159]).

Footnote 4:Although Capicotto's counsel affirms that he has "personal knowledge of the facts and circumstances set forth" in his affirmation and wherein he states, "A copy of Capicotto's Agreement is attached hereto as Exhibit A," counsel's affirmation does not establish his personal knowledge as to the agreement itself (see Silverstein affirmation [NYSCEF Doc. 212]).